**GOTZ et al. v. UNIVERSAL PRODUCTS CO., Inc.**

No. 1068.

District Court, D. Delaware.

Jan. 25, 1938.

Hugh M. Morris, of Wilmington, Del., William A. Strauch (of Strauch & Hoffman), of Washington, D. C., for plaintiffs.

William G. Mahaffy, of Wilmington, Del., Merrell E. Clark and William J. Barnes (of •Fish, Richardson & Neave) both of New York City, and William E. Hann (of Harness, Dickey & Pierce), of Detroit, Mich., for defendants.

NIELDS, District Judge.

Plaintiffs charge defendant with infringement of reissue patent No. 18,080 issued May 26, 1931, to Richard Gotz of Berlin-Gross-Lichterfelde, Germany, covering a needle bearing, being a reissue of the Gotz original patent, No. 1,717,204, granted June 11, 1929, upon an application filed March 25, 1925. All claims of the Gotz patent are in suit except claim 7 relating to connecting rod bearings. The defenses are invalidity and noninfringement.

The plaintiffs are: Leonore Gotz, a citizen of Germany and owner of the legal title to the patent in suit by inheritance from her husband, Richard Gotz; Spicer Manufacturing Corporation, a Virginia corporation, with a manufacturing plant at Toledo, Ohio, an exclusive licensee under the Gotz patent in the field of universal joints; Nadellager G. m. b. H., a German company, owner of the equitable title to the patent in suit and of all rights of recovery for infringement thereof.

Defendant is Universal Products Company, Inc., a Delaware corporation. It

is a manufacturer of automobile parts with a plant at Dearborn, Mich.

### Gotz Patent.

The Gotz patent describes bearings at the ends of a connecting rod of a high-speed internal combustion engine. The claims describe bearings irrespective of their application. The Gotz bearing consists of an inner bearing member, an outer bearing member, and a series of rods or needles interposed in the annular space between the two bearing members. In the drawing of the patent the annular space is bounded by inwardly projecting flanges which the patent says "limit the seating for the rods and also form oil reservoirs in which the rods are disposed."

The two characteristics of the patented bearing which are supposed to distinguish it from prior cageless roller bearings and to which the claims in suit are primarily directed are: (1) The size of the rollers, and (2) their close fit. The bearing claimed in the Gotz patent is a cageless roller bearing having rollers of small diameter of the order of piano wire from 2 to 5 mm. in diameter which are pressed together with such friction that under normal loads they will slide around as a unitary closed sleeve without any of them rotating about its own axis, it being only at times of overload that any of them will have a rotation of its own.

### Defendant's Structures.

Plaintiffs charge defendant with making and selling universal joints equipped with bearings of the type covered by the Gotz patent. The bearings on the trunnions of universal joints made and sold by defendant are charged to infringe certain claims of the Gotz patent. The two types of bearings made by defendant are: (a) "5350 Series Type," charged to infringe claims 1-6, 8, and 9 of the Gotz patent; and (b) "4200 Series Type," charged to infringe claims 1-5, 8, and 9 of the Gotz patent.

### History of Gotz Patent.

The circumstances preceding the filing of the Gotz application in the United States must be understood. In 1922 Georg Hoffmann, residing in Darmstadt, applied for a patent in Germany. March 13, 1924, a German patent was granted to Hoffmann, and on May 1, 1925, the patent issued as a printed publication. Contemporaneously, on January 31, 1925, an article was published in a German trade paper, "Automo-bil Motorrad Flugwesen," entitled "Connecting Rod Needle Bearings." Hereafter this article will be referred to as "the German article."

After the Hoffmann German patent covering his needle bearing was granted, Hoffmann asked his friend Hamacher to assist him in interesting capital in the patent. Shortly before February 27, 1925, Hamacher presented the matter to Gotz, secretary of a barrel manufacturers association in Berlin and a stranger to Hoffmann. Hamacher sent for Hoffmann, who came to Berlin and discussed the matter with Gotz. In turn, Gotz interested a man named Hanneman in the enterprise who was a "money giver" like himself. Thereupon, on February 27, 1925, the plaintiff Nadellager G. m. b. H. was formed, with a capitalization of 10,000 Reichmarks. According to the partnership agreement, the contribution by "the chief engineer, Mr. Georg Hoffman," of his German patent and foreign patent rights, was evaluated at 6,000 Reichmarks, giving him a 60 per cent. interest, whereas "the merchant, Mr. Richard Gotz," like Hanneman, the third partner, received a 20 per cent. interest in return for contributing 2,000 Reichmarks "in monies." Gotz was made manager of the new company. As such he immediately had patent applications for patents covering the Hoffmann needle bearing filed in a number of countries outside Germany. Each application was a copy of the Hoffmann German patent amplified by the drawing and portions of the text of the German article which had been published a month before the formation of the new company. Each application was filed in the name of Hoffmann except the application filed in the United States. This application was filed by Gotz in his own name as the inventor.

■ March 25, 1925, application was filed in the United States. Under U.S.R.S. § 4887, as amended by Act March 3, 1903, 35 U.S.C.A. § 32, Hoffmann had already forfeited his right to a United States patent. This section provides that "no patent shall be granted in this country" if the invention or discovery has been "first patented or caused to be patented by the inventor or his legal representatives or assigns in a foreign country" upon an application "filed more than twelve months" prior to the United States application. Hoffmann's German application had been filed July 22, 1922, more than twelve months

before March 25, 1925, the date of application in this country. In fact, the German application had matured into the German patent which Hoffmann had contributed to the new company. Hoffmann could not obtain a United States patent covering the subject matter of his German patent, so Gotz filed the application in his own name with the oath that he was the inventor. Upon that application Gotz obtained the Gotz patent which was reissued as the patent in suit. In so doing Gotz violated U.S.R.S. § 4886, as amended by Act March 3, 1897, 35 U.S.C.A. § 31, which provides that a valid patent can be obtained only by one who is in fact the original and first inventor thereof.

### Origin of Gotz Claims.

Two grounds for asserting invalidity of the Gotz patent are: (1) Gotz was not the original and first inventor of the subject matter of the Gotz patent; and (2) the Gotz patent is anticipated by the Hoffmann patent and by the German article.

The Hoffmann German patent was granted a year before the Gotz application was filed in this country, and plaintiffs admit that Gotz "contributed nothing" disclosed in it.

The claims of the Gotz patent may be divided into two groups for comparison with the Hoffmann patent. The first group includes claims 1-5, 8, and 9. These claims make no reference to the inwardly projecting flanges shown in the Gotz patent. Both types of defendant's universal joint bearings are alleged to infringe these claims. The second group includes only claim 6 which refers inferentially to flanges. Defendant's 5350 type bearing is alleged to infringe this claim. The groups will be dealt with in turn.

The two primary characteristics of the patented bearing according to the specification of the Gotz patent are: (1) The small diameter of the rollers or needles (of the order or size of piano wire, and specifically from 2 to 5 mm.), and (2) the pressing together of the needles with such friction that under normal loads they will slide around as a unitary closed sleeve without individual rotation, except at times of overload when some of them will rotate individually. All claims of the first group, being claims 1-5, 8, and 9, are directed to this subject matter. Excerpts from the specifications of the Gotz patent and from the Hoffmann German patent placed in parallel columns will show the identity of the two disclosures in these respects.

Claims 1-4-5, 8, and 9 of Gotz are completely anticipated by the German Hoffmann patent. They are all quite similar and claim 1 may be quoted as typical: "1. In a bearing, the combination of relatively rotatable cylindrical bearing races and a plurality of cylindrical needles interposed therebetween, such needles forming a closed ring or sleeve, which is compelled to revolve as an entirety in the same direction as the driving bearing member, without each single cylindrical needle being constrained to turn around itself."

Each of these claims is anticipated by the following paragraphs of the Hoffmann patent:

"The essential characteristic of the new bearing lies in a multiply divided bearing shell between the axle pin and the connecting rod, the separate parts of which consist of needles which, in running, form a sliding sleeve rotating freely around the axle pin and only a few of which, under a temporary overload, perform a rotation of their own.

"The needles, made of piano wire, silver wire or machine steel, hardened and ground, on account of their very small diameter (2 to 5 mm according to the diameter of the pin) in proportion to their length, close up closely together and thus produce a certain amount of braking friction in operation, which is so great that at ordinary bearing pressures the needles form a closed unit, a sliding bearing shell rotating freely around the pin."

Claims 2 and 3 of the first group were inserted into the Gotz application in 1929, four years after it was originally filed. They cover the same structure as the other claims in this group but include statements of function concerning which the Gotz specification is silent:

"2. In a bearing, the combination of relatively rotatable cylindrical bearing members, an intermediate bearing sleeve which revolves as an entirety and which includes a plurality of slidable bearing elements, said elements cooperating with each other and with the cylindrical bearing members to draw in and hold lubricant in wedge-shaped form between the elements and the bearing members.

"3. In a bearing, the combination of relatively rotatable cylindrical bearing elements and an intermediate bearing sleeve

which revolves as an entirety and which includes a plurality of independently movable slidable bearing elements with capillary spaces therebetween in which suction is produced by the cooperation of the bearing elements."

Thus plaintiffs seek to show that by virtue of the small diameter of the needles there will be a capillary action with respect to the lubricant. If any such action occurs in the bearing of the Gotz patent, it must occur also in the bearing of the German Hoffmann patent, 'where needles of the same diameter are used. When the idea of "capillary action" was first injected into the Gotz application in 1929, the basis for it was a report of "Diploma Engineer" Kroh. This report refers to tests of a bearing of exactly the character shown in the Hoffmann German patent i. e., a bearing without the inwardly extending flanges. The report states that "the small interstices are filled with oil, which is drawn into these spaces in consequence of their capillarity and in this way form a lubricating groove." It would be obvious to one schooled in the art that the bearings of the Hoffmann German patent were to be supplied with lubricant. Both "splash" and "pressure" systems of lubrication for connecting rod bearings were conventional at the time. Claims 2 and 3 apply to the disclosures both of the Gotz patent and the Hoffmann German patent and, like the other claims in this group, are anticipated by the Hoffmann German patent.

Plaintiffs seek to distinguish the Gotz bearing from the bearing of the Hoffmann German patent in two particulars: (1) That the Gotz patent describes the rollers or needles as "polished," while the Hoffmann German patent describes them as "ground"; (2) that the Hoffmann German patent fails to disclose the inwardly projecting flanges shown in the Gotz patent which "limit the seating for the rods and also form oil reservoirs in which the rods are disposed."

Defendant's expert testified concerning the first distinction that "polishing is just a fine degree of grinding," so that the two are "quite equivalent expressions." Here "ground" and "polished" represent varying translations of the same original German word. This appears from a comparison of the foreign patents, all of which were applied for about the same time. The British patent and translations of the French and Czecho-Slovakian patents use the word "polish," whereas the translations of the Swiss and Italian patents use the word "ground." Also the translation of the Nadellager circular issued in 1925, at about the time the patents were applied for, used the word "ground." However, there is no need of laboring the point, because none of the Gotz claims in suit makes any reference to "polished" rollers.

Plaintiffs urge that the inwardly extending flanges are a second distinction between the disclosures of the Gotz patent and the Hoffmann German patent. There is no reference to this feature in any one of the claims of the first group. Claims 1-5, 8, and 9 of the Gotz patent are anticipated in every detail by the disclosure of the Hoffmann German patent.

Claim 6 is confined to the flanged construction. It describes a needle recess formed in the bore of the bearing member "intermediate its ends": "6. In a bearing, the combination of a bearing member having a cylindrical bore, a journal member positioned within said bore, an annular recess formed in said bore intermediate its ends, and a plurality of cylindrical needles within said recess forming an intermediate and continuous bearing sleeve between said bearing and journal members, said sleeve being compelled to revolve as an entirety and said needles being constrained against individual rotation when under normal operating loads, said needles being made of material of the quality and size of piano wire."

Defenses to claim 6 are: (1) The limitation of claim 6 to the flanged form of construction does not distinguish it patentably from the Hoffmann German patent because there is no substantial difference between the flanged and unflanged forms. (2) The flanged construction was old and well known in the cageless roller bearing art long before Hoffmann or Gotz. (3) Claim 6 is anticipated in every detail by the German article which disclosed the flanged construction and was published before any date that can be established by Gotz. The above defenses will be dealt with in their order.

Plaintiffs contend that the flanged construction greatly improves the lubrication of the bearings. The record does not support this contention. Defendant's expert testified that the flanges "would have very little if any value" in connection with lubrication, and that "the lubrication would

be perfectly satisfactory with either the splash system or the pressure system which is shown entirely irrespective of whether or not the flange construction was present." The Kroh report in the file wrapper of Gotz' original United States patent describes only the unflanged construction and says of that construction: "The lubrication problem is * * * solved in the best conceivable manner." The only statement concerning bearings made for plaintiffs in this case was made by the witness Sandar. He was examined by deposition in Germany. He described and sketched the construction of bearings made "according to the instructions from Mr. Gotz" and showed them to be of the unflanged type. Similarly, in the advertising booklet put out by the Nadellager Company in 1928, three years after the formation of the company, the only connecting rod bearings are of the unflanged construction. If some of the Hoffmann early bearings were imperfect, it was not because the unflanged construction was used. If that had been the reason, the Nadellager Company would not have been urging the use of the unflanged form as late as 1928 and 1929. It is clear that the flanged form of needle bearing covered by claim 6 of Gotz has no substantial advantage over the Hoffmann German patent.

That the flanged construction is old is the second defense to claim 6. An example of this flanged construction in prior cageless roller bearings is found in Corver patent, No. 617,719, granted January 17, 1899. Corver's inward extending flanges at each end of the rollers correspond precisely to the inwardly extending flanges of the Gotz drawing and perform the same functions as are asserted in the Gotz patent. This is admitted by plaintiffs' expert: "XQ 129. I should now like to refer you to the Corver patent, Exhibit 67, and ask you whether or not that shows at w-w flanges which retain the rollers within recesses in the outer bore, and which also form a reservoir for the holding of lubricant? A. Yes."

Another prior art disclosure showing this flange construction in cageless roller bearings is Sharpe patent, No. 1,367,519, granted February 1, 1921. There the flanges are just like the flanges of the Gotz patent. Sweet patent, No. 1,141,-990, granted June 8, 1915, shows the lubricant retaining means employed in defendant's 5350 type of bearing alleged to infringe claim 6. In defendant's bearing there is no continuous supply of lubricant flowing in and out of the bearing as in the splash or pressure systems disclosed in the Gotz patent and no flanges like those shown in the Gotz patent. Instead, defendant's bearing is filled with grease when originally assembled. That grease is sealed within it by means of a closed cup at one end and packing surrounding the trunnion at the other.

In view of the prior art, no patentable novelty can be attributed to Gotz claim 6. The flange construction of claim 6 was a very common thing in this art. It is not invention to apply an old element to an old device when each continues to perform only its old function or functions, even though the result may be superior. Motion Picture Patents Co. v. Calehuff Supply Co., 3 Cir., 251 F. 598, 602; Altoona Theatres v. Tri-Ergon Corporation, 294 U.S. 477, 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005.

Claim 6, as well as the other Gotz claims in suit, is anticipated by the German article published January 31, 1925, in Automobil Motorrad Flugwesen. This is the third defense to claim 6. The publication of this article preceded the filing of the Gotz application by about two months. Bearings shown in the drawing of this article are specified on the drawing itself as "Hoffmann Needle Bearings." The text of the article attributes the bearings to Georg Hoffmann. They are of the flanged construction. The drawing in the article is the drawing copied into the Gotz patent and explains how the Gotz patent shows a Hoffmann bearing with a flanged construction.

In addition to copying the drawing in the German article, Gotz copied large portions of the text of the article to amplify what he had already copied from the Hoffmann German patent. The identity of the disclosures is so complete that plaintiffs admit in their brief "that the general description and the showing of the drawings is the same as in the Gotz patent." It follows that the disclosure of the German article responds to every detail of the Gotz claims in suit including claim 6.

Faced with this situation, and in desperation, plaintiffs contend that the addition of the flanges was the contribution of Gotz and that Gotz made that contribution prior to the date of the publication of the German article on January

31, 1925. This contention is flatly contradicted by the record. There is no evidence, documentary or oral, that Gotz contributed these flanges. None of the many witnesses examined by plaintiffs in Germany were asked whether he did so or not.

■ The law imposes upon plaintiffs the burden of establishing by clear, positive, and unequivocal proof that Gotz contributed the flanges before the date of publication of the article on January 31, 1925.

"When an inventor's date is to be carried back beyond his application, courts regard the effort with great jealousy, and must be persuaded with a certainty which is seldom demanded elsewhere; quite as absolute as in a criminal case, in practice perhaps even more so. * * * It makes no difference how the question arises; whether the patentee is carrying back his own invention, or a supposed infringer is carrying back his; the burden is the same as the proof necessary to establish a prior use." United Shoe Machinery Corporation v. Brooklyn Wood Heel Corporation, 2 Cir., 77 F.2d 263, 264. Charles Hunnicutt Co. v. A. B. Gaston Co., 3 Cir., 218 F. 176; Gibson v. Eastern Rim & Wheel Co., 3 Cir., 32 F.2d 774.

■ Consider again the surrounding circumstances. At the time, Gotz was secretary of a barrel manufacturers association in Berlin. He was not an engineer but purely a businessman. At the date of the publication of the German article it is doubtful whether Gotz had ever met Hoffmann or heard of the Hoffmann needle bearing. In his affidavit Hoffmann stated that it was in "the second half of the month of February, 1925," that he first met Gotz. The truth of this affidavit Hoffmann reaffirmed in his Berlin deposition. It will be recalled that it was not until the end of February, 1925, that the Nadellager Company was formed for the purpose of exploiting the Hoffmann invention.

A further contention of plaintiffs should be considered in the light of the surrounding circumstances. Plaintiffs contend that the Hoffmann needle bearing had been a failure until Hoffmann met Gotz and that Gotz contributed the idea of the flanges a month before the formation of the company. By so doing they say Gotz converted failure into success. This contention is completely refuted by the actual circumstances. In apportioning interest in the company, Hoffmann received the entire credit for the invention while Gotz received credit only for his contribution "in monies." In the circulars issued by Gotz as manager bearings of the same flanged construction as shown in the German article are styled "Hoffmann Needle Bearing." In May, 1925, Gotz referred to himself in a letter as "non-expert," and as unable to "refute in an expert-like manner" criticisms of a prospective customer. It is incredible that "the merchant, Mr. Richard Gotz," the secretary of the barrel manufacturers association, contributed the flanges in the Hoffmann needle bearing shown in the German article of January 31, 1925.

Where is the clear, positive, and unequivocal proof of this contribution by Gotz? The only support for the idea is inferences from the testimony of two interested witnesses. Neither witness makes any reference to flanges. The testimony of Hoffmann principally relied upon by plaintiffs is: "XQ 34. Who was responsible for the construction shown in the drawing of the Gotz United States Patent? XR. Mr. Gotz." Plaintiffs refrained from quoting Hoffmann's full answer. Hoffmann added: "Under the word 'responsibility' I understood the word 'having the responsibility.'" The additional words explain the answer. Gotz was manager of the company. As such he was responsible for the construction shown in the patent application which he filed for the benefit of the company. That is all Hoffmann meant. He did not mean that Gotz contributed technically to that structure. He could not have meant that Gotz contributed the flanges. In a later deposition taken by plaintiffs Hoffmann testified on cross-examination: "I do not know what specific improvements, if any, Mr. Gotz has made in my German Reich Patent." In view of this statement Hoffmann cannot cite as supporting plaintiffs' contention that Gotz contributed the flanges.

Gotz' real place in the picture appears in an earlier affidavit of Hoffmann in which he states: "Mr. Gotz came to know this invention from me. He, himself, was a business man and, as set forth in the foundation agreement of the 'Nadellager G.m.b.H.', occupied himself only with the commercial exploitation of my invention and my patents."

Hoffmann testified that "from the beginning" Gotz was occupied with technical improvements, and in answer to a leading

question said "that these improvements were included in the Gotz United States Patent application." "From the beginning" doubtless means "from the formation of the Nadellager G.m.b.H.," which was a month after the date with which we are concerned. When Hoffmann was asked on cross-examination to describe the "technical improvements" to which he referred, he confessed his utter inability to do so.

The testimony of these two witnesses, Hoffmann and Hanneman, is unsupported by any documents of any kind. It is the only evidence to which plaintiffs refer to establish that Gotz contributed the flanges and that he did so before January 31, 1925. This testimony does not support that contention. It is not the strong and convincing proof required.

The court sustains the defense of invalidity. In view of this, it is unnecessary to discuss the additional defense of noninfringement. Defendant's bearings are different from the bearings of the Gotz specification and claims. They are exactly like the Franklin bearing which preceded the Gotz application by seventeen years. Also they are exactly like the bearing of the Walker British patent No. 11,580 of 1906 which Gotz specifically disclaimed. Under these circumstances defendant's bearings cannot infringe any of the Gotz claims.

The Gotz patent is invalid and none of its claims have been infringed by the defendant.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with equity rule 70½, 28 U.S.C.A. following section 723.

The bill of complaint must be dismissed.