## GOTZ et al. v. UNIVERSAL PRODUCTS CO., Inc.

### No. 6818.

Circuit Court of Appeals, Third Circuit.

Oct. 4, 1939.

Samuel E. Darby, Jr., of New York City, Thomas G. Haight, of Jersey City, N. J., and Wm. A. Strauch, of Washington, D. C., for appellants.

Merrell E. Clark, of New York City, William E. Hann, of Detroit, Mich., and William J. Barnes, of New York City, for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

We are in complete accord with the opinion of the learned district court judge dealing with the technical aspects of the case below, Gotz v. Universal Products Co., D.C., 22 F.Supp. 215. The art is that of bearings, the name given to the supports of a rotating shaft. The shaft imposes a load on each of the bearings supporting it, and it is turned against the frictional resistances caused by this loading. The rotation of the shaft against the frictional resistances in the bearings caused by the loading absorbs energy from the prime mover and this energy is converted into heat. The dominating principle of design is therefore so to proportion the parts to the loads and the lubrication to the speed that the heat necessarily produced by the rotation of the shaft is dissipated without undue rise of temperature. Various types have been utilized for modern high speed engines. Of all of them, the roller bearing has been considered mechanically most perfect. In these bearings the resistance to rolling is substituted for sliding resistance. Advantage is taken of the scientific theory of rolling friction, Reynolds, Scientific Papers, Vol. 1; Professor Goodman, Roller and Ball Bearings, Proceedings of the Institute of Civil Engineering, Vol. 189; Macaulay's Handbook on Ball and Roller Bearings (1924); and see also, Riccorda, The Internal Combustion Engine, Vol. 1, p. 181 (1922); Mallory, Internal Combustion Engine, p. 253 (1933); Hutoller, Mechanics of Gasoline Engines (1923), Chapter on Connecting Rods. It is hardly necessary to say, of course, that bearings of all sorts contemplate an oil film which converts the frictional resistance between greased metal surfaces into the shearing resistance of an oil film under pressure.

The subject matter of the patent in suit (Gotz, Original No. 1,717,204, Reissue No. 18,080) is for a radial roller bearing described as a needle bearing because of the small size of the individual rollers. It is conceded that this patent is completely anticipated by the earlier German patent to Hoffmann, No. 393,788. It is claimed, however, that it shows an improvement over Hoffmann in respect to (1) the size of the piano wire needles, (2) their compression, and (3) the presence of inwardly extending flanges. As we have said, we are quite satisfied with the learned district judge's disposition contra the patent of these alleged improvements and we shall not,

therefore, burden this opinion with any recapitulation of his views.

We should, therefore, have followed our occasional practice and affirmed on the opinion below, but for one thing. That one thing is our desire to reemphasize the learned district judge's finding that the plaintiffs-appellants brazenly, as we think, violated the laws of the United States. Those laws, insofar as they are relevant here, award patents of monopoly only to those who deserve them, namely, "first and true inventors". 35 U.S.C.A. § 31. The plaintiff licensor Gotz (Anglicized apparently) applied and filed the oath necessary thereunder. This despite the fact that, in our opinion, he was very little more entitled to the designation than we are. Such crass conduct would ordinarily be difficult to account for. In the case at bar, however, there was a dilemma. Foreign patents in the name of Herr Georg Hoffmann had already been applied for and granted. Accordingly, under the statute, 35 U.S.C.A. § 32, another name had to be used in the United States. We appreciate the problem; we do not approve of its solution.

The individual who applied for the patent, Herr Hoffmann, is a graduate of an industrial school, Record 346, and between 1897 and 1924 worked as an engineer and consulting engineer with a long list of machinery and automobile manufacturing concerns, Record 357. The alleged United States inventor, Herr Goetz, on the other hand, was a mercantile and technical traveling official of an Association of Barrelmakers (Fassverband), Record 141. An interested witness, Herr Hannemann, claims that the latter was to give technical advice on the subject of barrels, Record 141. Our impression and that of the learned district judge is that Herr Goetz was the secretary of the Association. At any rate there is no claim that he had the slightest scientific knowledge of internal combustion and other engines and, *a fortiori*, of that phase of their successful operation represented by the art of the patent. Herr Goetz is now dead, but unfortunately for the plaintiffs-appellants he left some letters behind him. In two of these he refers to himself in this language:

"* * * I as *nonexpert* consider the material left as not sufficient". Letter dated May 6, 1925 addressed to Mr. Hugo Hamacher, Defendant's Exhibit No. 12, Record, Vol. 2, p. 170 (italics ours).

"* * * He brought up mile-long objections about the possibility of carrying-out our matter and about the strength, the exactness, etc., which I of course could not refute in an *expert-like* manner but which I described as cleared up by practical operation". Letter dated May 11, 1925 addressed to Mr. Hugo Hamacher, Defendant's Exhibit No. 14, Record, Vol. 2, p. 172 (italics ours).

We spoke of Herr Hannemann as an interested witness; let his interest appear in the words of Herr Hoffmann: "* * * I first met Mr. Goetz after a personal attempt of financing my needle-bearing affair had failed. I charged Herrn Hamacher, Berlin W. 15, Brandenburgische Str. 32, who was a friend of mine, to assist me in this matter. Some time afterwards Herr Hamacher wrote me, it may have been quite at the end of the year 1924 that he had by chance met his old fellow of war, Herrn Goetz in the street Unter den Linden and that he had offered him the needle bearing for financing. Herr Goetz showed a very great interest for this matter and asked me to come to Berlin in order to have a discussion with Herr Goetz. I went with Herr Hamacher to the office of the Fass-Verband (Barrel Manufacturers' Association), Unter den Linden 20, where after some time Herr Goetz appeared in a small anteroom. I explained my invention to Herrn Goetz and had the impression that Herr Goetz was very pleased, and after a short explanation given by me, as to the matter which as it seemed, he understood immediately, he promised me that financing would be done by him. He asked me and Herrn Hamacher to treat this needle-bearing matter with nobody else and said that he was going to get directly into connection with another money giver. He said, he was sure, that there was no question that the other money giver would also immediately consent to this affair". Deposition of Herr Hoffmann, Record, Vol. 1, p. 328.

The role of "honest broker" was successful and resulted in a partnership agreement for the exploitation of the needle bearings of the German patent. This agreement described the parties as:

"1°) the *manager* Mr. Alfred Hannemann of Berlin Grunewald, Wallotstr. 10.

"2°) The *Chief-engineer* Mr. Georg Hoffmann of Darmstadt, Viktoriastr. 42.

"3°) the *merchant* Mr. Richard Gotz of Gross-Lichterfelde Steinmetzstr. 3" De-

**42**

fendant's Exhibit No. 2, Record, Vol. 2, p. 144 (italics ours).

and their respective interests appear therein as:

"The original capital of the partnership amounts to 10,000 Reichsmark. On this capital the partners have to make the following contributions:

1. Mr. Hannemann     Reichsmark 2000.00
2. Mr. Hoffmann          "          6000.00
3. Mr. Gotz               "          2000.00

"The following contributions will be made and taken over by the company:

"a)  Mr. George Hoffmann contributes to the company the German patent 393788 named in #2 of this contract, as well as such rights of protection which accrue from the applications for the patent in various countries. The value of this contribution is fixed at Reichsmark Six Thousand. Herewith Mr. Hoffmann's contribution to the capital is made". Defendant's Exhibit No. 2, Record, Vol. 2, pp. 145-146.

To these, to our mind, damaging revelations we think we need only further call attention, as did the learned district judge, to the pressure of cross-examination on the embarrassed Herr Hoffmann. The latter had testified that Goetz had:    "* * * not only the technical, but also the commercial management of the company. Thus he had the *general management* of the 'Nadellager G. m. b. H.' ". Deposition of Herr Hoffmann, Record, Vol. 1, p. 339 (italics ours).

On cross-examination he was constrained to further qualify his words thus:

"XQ. 34.  Who was responsible for the construction shown in the drawing of the Goetz United States patent?

*    *    *    *    *    *    *

"Herr Hoffmann: Under the word 'responsible' I understood the word 'having the responsibility' ". Deposition of Herr Hoffmann, Record, Vol. 1, p. 331.

See also an earlier affidavit of Herr Hoffmann, Record, Vol. 2, p. 205.

To summarize, in 1925 we have a sort of traveling salesman of barrels investing capital in a complicated invention. Four years later this same capitalist finds he can increase the return on his investment by obtaining a patent in his own name in the United States. He is accordingly transformed into a remarkable technician. In our view, it is just not good enough.

The decree of the learned district judge is affirmed.