### STANDARD BRANDS, Inc., v. NATIONAL GRAIN YEAST CORPORATION.

#### No. 4552.

District Court, D. New Jersey.

Dec. 6, 1940.

Watson, Bristol, Johnson & Leavenworth and Clair V. Johnson, all of New York City, for plaintiff.

Winne & Banta and Walter G. Winne, all of Hackensack, N. J., for defendant.

FAKE, District Judge.

The issues here arise on defendant's motion to retax the costs by adding the following items to the bill:

1. Premiums paid on United States Fidelity and Guaranty Company bond, Surety for $50,000, executed March 22, 1935, filed March 25, 1935... $2,375.00
2. Premiums paid on National Surety Corporation bonds, surety for $40,000, dated July 23, 1935, filed July 23, Aug. 20, and Sept. 20, 1935....... 2,118.22
3. Attorneys' fees and disbursements in taking testimony under a commission to Germany 6,760.45
4. Technical experts' fees in taking testimony under a commission to Germany......... 1,250.00

An examination of the record discloses that this suit was instituted in the year 1932 and defendant was not ready for trial in 1935 when it sought a commission to take testimony abroad. The commission was allowed conditioned upon the filing of the bond first above mentioned. The bond was to be in the amount of $50,000 to secure the plaintiff for payment of its expenses incurred in attending the examination abroad and the payment of such sums as might be due it in the event that any one of the patents in suit was held valid and infringed and to run from March 1,

1935, until the commencement of the trial. The minutes indicate that the plaintiff was opposed to any further delay, and therefore opposed to the issuance of the commission. It is clear that the adjournment which the commission entailed was granted only when the Court was satisfied that defendant would not be in a weaker position financially when the date of trial might arrive, and so in effect the defendant was obliged to pay for the adjournment by the delivery of the bond. Nothing in the wording of the bond or the order of the Court afforded the defendant any relief for the premiums it might pay, in the event defendant should succeed at the trial.

The premiums mentioned secondly above fall in exactly the same classification and arose out of a further adjournment for which the defendant was obliged to give bonds totaling $40,000.

In The Texas, 226 F. 897, 905, Judge McPherson, in the year 1915 in dealing with the taxing of the amount of premiums on bonds in an admiralty case, and after considering a number of cases cited in his opinion, said: " * * * we shall only add our approval of the argument that a rule of court, or a practice equivalent thereto, is needed to justify the taxation." In Newton v. Consolidated Gas Co., 265 U.S. 78, 44 S.Ct. 481, 484, 68 L.Ed. 909, the amounts of premiums on bonds in an equity case were taxed because to do so was in conformity with a usage in the Southern District of New York, and Mr. Chief Justice Taft said in that case, after considering the opinion in The Texas, supra: "It may be that, in a circuit and district where no usage or rule of court exists, such costs may not be taxed. We are not called upon to decide that. It is enough, that we may decide this appeal, to hold that it was not an abuse of discretion or a violation of law for the District Court in the Second Circuit to allow the item." In closing, he says: " * * * a rule of court or usage which imposes the expense of the security on the defeated party is not unreasonable." While the Supreme Court does not in express terms approve the position taken by Judge McPherson, in The Texas, supra, it does not reject it, and no case in this Circuit has been cited to circumvent the rule therein established. Nor have I found any myself in running down the cases on the subject.

In the Newton case, supra, it appears that the District Court had found that a rate of 80 cents for gas was confiscatory and it granted an injunction to prevent its enforcement, but as a condition thereof, and pending an appeal, it required the company to impound with a special master all sums charged in excess of the 80-cent rate. Thereafter, the District Court granted leave to substitute surety bonds in lieu of cash. The premiums on these bonds aggregated upwards of $78,000 and the amount thereof was taxed as costs by the District Court; exception thereto was overruled, and the issue was appealed directly to the United States Supreme Court. In the course of the opinion it is said: "Questions of costs in admiralty and equity are discretionary, and the action of the court is presumptively correct. * * * The allowance of costs in the federal courts rests, not upon express statutory enactment by Congress, but upon usage long continued and confirmed by implication from provisions in many statutes." The question in that case was somewhat related to the issue in the instant case. It is stated there by Mr. Chief Justice Taft as follows: "The question is whether premiums for bonds, paid by a party litigant to preserve his rights and save him from loss under the orders of court pending the litigation, can be taxed as costs against the defeated party."

It was found that it had been the practice in the Southern District of New York to allow as costs the amounts of premiums on stipulations given to release vessels from arrest. It was further found that premiums on a supersedeas bond had been allowed in an equity case and such had been the usage for the fourteen years during which Judge Lacombe had sat in that district.

So here, taking notice of the records of this court, it is found that the amounts of premiums on supersedeas bonds have been taxed as costs, and the amounts of premiums on bonds to release vessels in admiralty have also been taxed as costs time out of mind.

If these premiums were necessitated in the preservation of defendant's rights, it might follow that the amounts thereof in the instant case should be allowed. It should be noted, however, from the language used in the Newton case, supra, that the allowance of costs in such instances as this rests in the sound discretion of the court; the court being responsible for the abuse of that discretion, and it is upon this point that the problem here will be solved to the contrary.

62

Upon reading the affidavits submitted on this motion, it is found that an affidavit of one Hayduck had been taken in 1934 in Germany and was obtained through the activities of Mr. Brass, the president of the defendant company and others cooperating with him, whereby Hayduck was induced to believe falsely that he was not the sole inventor of a certain patented process which was involved in the case here, and by virtue of being so wrongly advised, he later characterized the language of his own affidavit as follows: "I must now declare expressly that I submitted my sworn affidavit of that time exclusively under the influence of the statements made to me by Patent Attorney Michaelis. In the meantime, however, and as I expressly declare, after thorough deliberation on the basis of reading Michaelis' book 'Practical Handbook of United States Patent Law', I have come to the conviction that the statements at that time supplied to me by Michaelis were not correct, that is, in other words: To-day I would no longer make the affidavit of August 11, 1934."

Mr. Clair V. Johnson, a member of the firm of Watson, Bristol, Johnson & Leavenworth, attorneys for the plaintiff herein, deposes in his affidavit of September 4, 1940, that, as soon as the commission was issued in 1935, he went to Germany in advance of defendant's counsel and interviewed the proposed witnesses and found the facts above outlined. Whereupon he telephoned to Mr. Watson of his firm and he in turn advised the then counsel for defendant of the situation thus presented, and by reason thereof the depositions would be "a mere waste of time and money." Defendant's counsel had not at that time left for Germany and despite such notice, went to Berlin. That the warning set in motion by Mr. Johnson from Berlin and communicated to defendant's counsel was justified and should have been heeded is fully borne out by subsequent events. The testimony obtained under the commission was never presented or used at the trial. True, it was considered by substituted counsel for the defendant in preparation for trial, and resulted in eliminating certain issues but this does not weigh very heavy in its bearing as to costs, since it should be classified as one of those expenses incident to preparation for trial, which can never be construed as taxable on any present theory.

Again, the plaintiff lost considerable time by virtue of the adjournments incident to the issuance of the commission and, at the moment, held the patents in suit with presumptions of their validity. That they were eventually found to be invalid has no very serious bearing on the question of the taxation of these costs, since plaintiff was entitled to a judgment for or against validity within a reasonable time and by virtue of defendant's dilatory moves, this was denied. It is not, therefore, an arbitrary exercise of power under the facts shown in this case, to conclude that the adjournments upon the conditions imposed by the court constituted closed transactions in so far as costs in favor of defendant might be concerned. True, it now appears that plaintiff's suit was ill-founded and a great burden was cast upon the defendant to establish that result, but this does not satisfy the loss of time which plaintiff suffered in obtaining the result and which defendant had no right to in the absence of the securities ordered.

Items 3 and 4 above can not be allowed, not only because they are affected by the same weakness as appears under items 1 and 2, but for the further reason that there is no statute, rule of court, practice or usage under which such items may be recognized as taxable in this district.

Defendant's motion is denied, and an order will be entered to that effect.