**GOTZ et al. v. UNIVERSAL PRODUCTS CO., Inc.**

No. 1068.

District Court, D. Delaware.

June 12, 1943.

S. Samuel Arsht and Morris, Steel, Nichols & Arsht, all of Wilmington, Del., and William A. Strauch and Strauch & Hoffman, all of Washington, D. C., for plaintiffs.

Arthur G. Connolly, of Wilmington, Del., and William J. Barnes and Fish, Richardson & Neave, all of New York City, for defendant.

LEAHY, District Judge.

Defendant seeks allowance of costs in a certain patent suit tried before Judge Nields in this court. The patent was held invalid. D.C., 22 F.Supp. 215. The Circuit Court of Appeals for this circuit affirmed. 107 F.2d 40.

The parties asked the court to sit in at the informal argument before Edward G. Pollard, Clerk of this Court, and to give the Clerk the court's views on the various items making up defendant's bill of costs so that the parties could dispense with a review by the court under Rule 54 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

I, therefore, instruct the Clerk of the Court as follows:

To understand the unusual nature of this litigation, a background recital is needed.

In 1922, a George Hoffman of Darmstadt, Germany, invented a needle bearing. Application was filed on July 28, 1922, and a German patent issued on May 1, 1925. Hoffman encountered difficulties in exploitation until he met one Gotz who organized the Nadellager, G. m. b. H.[1] in February, 1925, and became its General Manager. Gotz, responsible for securing patent protection for the Hoffman invention in foreign markets, caused corresponding applications to be filed in Hoffman's name in Great Britain, France, Switzerland, Czechoslovakia and Italy. He faced a problem when it came to filing an application in the United States because, as Hoffman had filed in Germany on July 28, 1922, he should have filed in this country within twelve months thereafter.[2] This, he failed to do. Gotz naturally wanted to exploit in the United States—a field of high potential markets. He simply selected the expedient of filing an application in his own name on March 25, 1925, as the original inventor. Later the patent in suit issued to him as No. 1,717,204, reissued as Reissue No. 18,080.[3]

These facts were known in the litigation as the "German defense." Since the dramatis personae and the evidence were both in Germany, the discovery of such evidence in support of the defense was both difficult and expensive to defendant. The procuring of such evidence by means of a dedimus potestatem[4] order and the expenses of bringing one witness to this country to testify are items in controversy.

I. Item VI of the bill of costs. This relates to expenses incurred in taking tes-

---

[1] The plaintiffs were described by Judge Nields (22 F.Supp. 215): "The plaintiffs are: Leonore Gotz, a citizen of Germany and owner of the legal title to the patent in suit by inheritance from her husband, Richard Gotz; Spicer Manufacturing Corporation, a Virginia corporation, with a manufacturing plant at Toledo, Ohio, an exclusive licensee under the Gotz patent in the field of universal joints; Nadellager G. m. b. H., a German company, owner of the equitable title to the patent in suit and of all rights of recovery for infringement thereof."

[2] R.S. § 4887, 35 U.S.C.A. § 32.

[3] Judge Nields laconically commented on this conduct. He wrote (22 F.Supp. at page 217): "Gotz violated U.S.R.S. § 4886 [35 U.S.C.A. § 31]."

On appeal, Judge Clark elaborated. He said (107 F.2d at page 41): "We should,

therefore, have followed our occasional practice and affirmed on the opinion below, but for one thing. That one thing is our desire to reemphasize the learned district judge's finding that the *plaintiffs-appellants brazenly, as we think, violated the laws of the United States.* Those laws, insofar as they are relevant here, award patents of monopoly only to those who deserve them, namely, 'first and true inventors'. 35 U.S.C.A. § 31. The plaintiff licensor Gotz (Anglicized apparently) applied and filed the oath necessary thereunder. *This despite the fact that, in our opinion, he was very little more entitled to the designation than we are.* Such crass conduct would ordinarily be difficult to account for." [Italics mine.]

[4] Issued under R.S. § 866, 28 U.S.C.A. § 644.

timony[5] in Germany under the dedimus potestatem.[6] Both the district and circuit courts relied on this testimony to show that the invention in suit contained no invention of Gotz, but only that of Hoffman.

Plaintiffs argue that the dedimus order plainly restricts allowable costs to those which are "taxable under the United States Statutes and Federal Equity Rules." Defendant contends that this technical position ignores what was the real intent of the parties, viz., that the prevailing party should recover his expenses arising out of the taking of the German depositions; otherwise there would have been no point in this provision of the order.

Costs in equity causes are not limited to the items specified in the statute (R.S. § 983, 28 U.S.C.A. § 830), but additional items are allowable in the discretion of the court unless controlled by statute or rule of court. Barber-Coleman Co. v. Withnell, D.C., 28 F.2d 543, 544. The only case in this circuit touching on the present inquiry is Standard Brands v. National Grain Yeast Corporation, D.C.N.J., 36 F. Supp. 60, 62. There, the items consisted of expenses incurred in taking certain testimony in Germany. Judge Fake disallowed the items for the "reason that there is no statute, rule of court, practice or usage under which such items may be recognized as taxable in this district." But it is to be specifically noted that in the Standard Brands case the court also said: "The testimony obtained under the commission was never presented or used at the trial." It was, in fact, "one of those expenses incident to preparation for trial, which can never be construed as taxable on any present theory."

In the case at bar the depositions—absolutely essential for maintenance of the German defense—were relied on by both the lower and appellate courts in sustaining the defense for which they were taken. Item VI will be allowed.

II. Item V. This involves expenses of a deposition of a Marguerite Breuer of Berlin, Germany. Her testimony was considered of such importance she was asked and came to this country to testify. The trial was delayed. She had to return to Europe. Her deposition was taken in New York before sailing. The item includes (a) reporter's and interpreter's fees, (b) the attorney's deposition fee of $2.50 and (c) a per diem, mileage and sustenance fee of the witness.

She testified at length regarding the relations of Hoffman and Gotz; how she had advanced money to Hoffman to assist him in developing his invention; that Gotz had no mechanical training; and the circumstances surrounding the formation of the German Company. The importance and value of this testimony—as well as the exhibits introduced during the taking of this deposition—are shown by the significance given to them by the parties and all the judges who passed on the issues.

Hence, the ordinary reporter's fees, the attorney's deposition fee,[7] and the usual witness fees are allowed. Likewise, the interpreter's fee should be taxable on the authority of the S. V. Luckenbach, 2nd Cir., 197 F. 888. While there is nothing in the statute (28 U.S.C.A. § 600) which limits mileage fees to within 100 miles of court, it is the practice in this district to allow all mileage within the district, but to limit mileage without the district to 100 miles.[8] The costs for the full distance which the witness Breuer was required to travel is disallowed, and she is limited to the allowance customarily granted in this district.

---

[5] In fact, the testimony was taken pursuant to stipulation of counsel rather than under the dedimus for on arrival it was learned that the American consul was unable to take the testimony in the face of a certain treaty then existing between the United States and Germany. However, the stipulation provided that the testimony could be taken "with the same force and effect" as if actually taken under the dedimus. The testimony was taken on a second trip to Germany; a previous trip had been made to investigate the German defense for which no costs are sought by defendant.

[6] The dedimus order of this court dated February 18, 1935, provided: "That each party shall pay its own counsel fees and expenses arising out of the taking of such depositions, in the initial instance, and that such costs as are taxable under the United States Statutes and Federal Equity Rules shall be ultimately taxed as costs in this suit."

[7] 28 U.S.C.A. § 572.

[8] While there is no reported decision in this district, the rule would seem to be the same in the Eastern District of Pennsylvania. See The Progresso, D.C., 48 F. 239.

156

■ III. Item VII, Defendant's Exhibits 59–59c. This deals with the expenses incurred in preparing certain exhibits. Defendant took high speed motion pictures of the early Franklin bearing and its own bearings operating under actual working conditions. The pictures were taken at speeds varying from several hundred to more than a thousand frames per second. They were then run in "slow motion" so that the court could see, in fact, how the needles behaved without having to reconcile the conflicting theories proffered by the experts. Special apparatus and highly skilled operators were necessary to exhibit the films. Costs for such exhibits have been held taxable. Victor Talking Machine Co. v. Starr Piano Co., 2d Cir., 281 F. 60, 66. The language of Judge Augustus Hand in the cited case is peculiarly apt here. He wrote: "In this case, however, it was practically impossible for the trial court to get a visual idea of the operation of cutting tools and of the character of the grooves formed by them without illustration and enlargement in the way adopted." See, too, Appliance Inv. Co. v. Western Electric Co., 2d Cir., 61 F.2d 752, 753.

The costs sought for the pictures amount to $6,026.91. This amount is made up, in part, of expenses in the amount of $4,603.20 incurred in determining a suitable method of photographing. The actual cost of defendant's exhibits 59-59c, after a satisfactory method had been developed, amounts to $1,423.71. I do not think that the court should grant more than the actual cost of reproducing the four motion pictures. $1,-423.71, therefore, is allowed for this item.

■ In passing, I wish to note that it is only because of the unusual circumstances of this case that the above allowance is made. I do not think a party acting on his own initiative should impose a burden of costs upon the unsuccessful party by preparing expensive illustrations and exhibits without first consulting with the court.

These are matters which should properly be determined in pre-trial conference under Rule 16 of the Rules of Civil Procedure.[9] Under such procedure counsel can be informed, in the majority of cases, whether such illustrations and exhibits will be necessary to enable the trial court to understand the invention. If the suggested procedure is not adaptable in all cases, it is, at least, a good starting point, for in a sense it allows the court to keep counsel from creating burdensome costs which, if not finally allowed, the client for whom they are used must ultimately pay. Especially is this true in patent litigation where quite often substantial sums are expended in the prosecution and defense of such actions.

■ IV. Item VIII, plaintiffs' exhibits 3, 4 and 44, defendant's exhibit 54. These involve several stipulated charts as to which each party paid one-half the costs of preparation. It seems to me they are explanatory and argumentative illustrations of certain physical exhibits relied on by plaintiffs and defendant respectively. Two cases in this circuit have rejected such items as allowable costs.[10] As the cost of expert services are not taxable, Cheatham Electric Switching Device Co. v. Transit Development Co., 2d Cir., 261 F. 792, Symington & Son, Inc., v. Symington Co., D.C., 12 F.Supp. 391, the costs of preparing the charts should be disallowed, as these exhibits were merely illustrative of the testimony of the experts.

■ V. Ordinary items. The remaining items in defendant's bill of costs are attorney's docket, clerk's, and reporter's fees, together with trial witness and mileage fees. All are allowed. Defendant's exhibits representing translations are allowed. Likewise the item for the cost of the copies of the file wrapper of the patent in suit is allowed. Eickhoff v. Vulcan Iron Works, D.C., 2 F.R.D. 490.

Let the Clerk fix costs in accordance with the foregoing.

[9] Rule 54(c) of the Rules of Civil Procedure permits the Clerk of the Court to fix costs initially after the cause has terminated. In the majority of causes, he actually does. But under 28 U.S.C.A. § 830 the judge may also fix costs.

[10] Galion Iron Works & Mfg. Co. v. Beckwith Machinery Co., D.C., 25 F.Supp. 591; Cincinnati Traction Building Co. v. Westinghouse Air Brake Co., D.C., 27 F.Supp. 329.