**KAISER INDUSTRIES CORPORATION,**
Vereinigte Oesterreichische Eisen-Und
Stahlwerke Aktiengesellschaft, and Bras-
sert Oxygen Technik Ag., Plaintiffs,
v.
**McLOUTH STEEL CORPORATION,**
Defendant.

**Civ. A. No. 16900.**

United States District Court,
E. D. Michigan, S. D.

·April 17, 1970.

See also, 6 Cir., 400 F.2d 30.

William H. Webb, John M. Webb, David C. Bruening, Webb, Burden, Robinson & Webb, Pittsburgh, Pa., John A. Dienner, Edward C. Grelle, Brown, Jackson, Boettcher & Dienner, Chicago, Ill., George E. Brand, Jr., Detroit, Mich., for plaintiffs.

John Vaughan Groner, Ronald F. Ball, Donald E. Degling, Fish, Richardson & Neave, New York City, William B. Cudlip, T. Donald Wade, Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for defendant.

OPINION

FREEMAN, Chief Judge.

In 1957, plaintiffs, hereinafter referred to as Kaiser, filed suit against McLouth Steel Corporation, alleging that McLouth was infringing their patent relating to a method for the production of steel. In 1966, after a trial which required 150 days, this court issued its Opinion holding that the patent relied upon by plaintiff was invalid "under 35 U.S.C. § 112 for failure of the claims to particularly point out and distinctly claim the subject matter which the applicants regarded as their invention." Henry J. Kaiser Co. v. McLouth Steel Corp., D.C., 257 F.Supp. 372, 442.

On November 5, 1969, the defendant filed its Bill of Costs seeking to tax $178,202.60 in costs against Kaiser. On November 21, 1969, a hearing was held on the proposed Bill of Costs. Briefs have been filed by both parties.

Kaiser opposes all items proposed to be taxed except:

1. Appeal fee of the Clerk—$5.00;
2. Marshal's fees—$17.28;
3. Docket fees, authorized by 28 U.S.C. § 1923, itemized in Schedule V—$50.00; and
4. Costs on the Mandate of the Court of Appeals—$7,938.66.

The total of these items is $8,010.04, leaving $170,192.56 in dispute.

It is convenient to first set out the basis of this court's authority to tax costs. Rule 54(d) provides in relevant part:

"*Costs.* Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; * * *."

Also relevant are 28 U.S.C. § 1920 (dealing with taxation of costs generally), Section 1923 (docket fees and costs of briefs) and Section 1821 (witness fees).

 As a general proposition, the prevailing party is entitled to costs in

the District Court; however, Rule 54(d) immediately qualifies this by the phrase "unless the court otherwise directs." This qualification states an equitable principle and vests in the District Court a sound discretion over the allowance, disallowance, or apportionment of costs in all civil actions. 6 Moore's Federal Practice, § 54.70[5] at p. 1308. On this point at least the parties appear to be in agreement.

█ Kaiser argues, however, that it prevailed on many of the issues to which individual cost items relate, and therefore these cost items should not be taxed against it. Implicit in this argument is the theory that defendant, McLouth, is not entitled to tax costs relating to individual issues on which it lost, even though it ultimately prevailed. Rule 54(d) does not speak in terms of the party who won on any given issue; rather it speaks of the "prevailing party." Professor Moore has pointed out:

"Although a plaintiff may not sustain his entire claim, if judgment is rendered for him he is the prevailing party. Thus the costs of witnesses, who testify only upon an issue decided adversely to the party who calls them, *may*, nevertheless, be allowed to the party if he finally prevails in the action." 6 Moore's Federal Practice, § 54.70[4] pp. 1305–1306. [Emphasis added.]

See also Ryan v. Arabian American Oil Co., 18 F.R.D. 206 (S.D.N.Y.1955), and Bowman v. West Disinfecting Company, 25 F.R.D. 280 (E.D.N.Y.1960). The court may nonetheless consider the number of issues involved and those upon which the prevailing party won in exercising its discretion in allowing or disallowing costs.

The Supreme Court has also noted on several occasions its concern that the costs of litigation be kept to a minimum and that this policy should be of foremost concern to the District Court in exercising its discretion in taxing costs. "We do not read that Rule [Rule 54(d)] as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny. Any other practice would be too great a movement in the direction of some systems of jurisprudence, that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be. Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation." Farmer v. Arabian American Oil Company, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L. Ed.2d 248 (1964).

With this background, attention can now be focused on the individual items of cost which are disputed by Kaiser.

█ *Transcript Costs ($10,202.50).* Defendant seeks to tax against plaintiffs the fees of the court reporter for the transcripts of the pretrial, trial, and post-trial hearings. These fees are itemized in Schedule II of defendant's proposed Bill of Costs. The $10,202.50 sought to be taxed consists of one-half of the cost of the copy of the transcript supplied to the court and the cost of one copy supplied to defendant's counsel for the enumerated hearings. The largest portion of this cost is $8,669.40 for the trial transcript. 28 U.S.C. § 1920(2) provides that a judge of any court of the United States may tax as costs the "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."

There seems little dispute that the court has the power to tax defendant's share of the cost for the copy of the transcript supplied to the court. How-

ever, there is a conflict in the cases, beginning with Stallo v. Wagner, 245 F. 636, 641–642 (2nd Cir.1917), as to whether a court may properly tax the cost of the transcript ordered by the attorney of the prevailing party. Professor Moore takes the position that this is, and should be, a taxable cost. He is supported in this position by most of the recent cases dealing with the point. See 6 Moore's Federal Practice, § 54.77[7] and Syracuse Broadcasting Corp. v. Newhouse, 319 F.2d 683 (2nd Cir.1963).

Since the court concludes that it does have the power to tax the cost of both the court's copy and the prevailing party's copy of the transcript, the question becomes how the court should exercise its discretion in this matter. It would appear from both the length of trial and complexity of the case that a daily transcript of the testimony and final arguments was reasonably necessary for proper trial and decision of the case. Consequently, defendant should be permitted to tax the cost of its copy of the transcript and its share of the court's copy of the transcript of the trial and final arguments, a total of $9,382.35. The court finds, however, that transcripts of the pretrial hearings listed in Schedule II of the proposed Bill of Costs were not reasonably necessary for proper presentation of the case and therefore disallows the costs thereof.

*Printing Costs ($4,860.30).*

The next disputed item in the proposed Bill of Costs is entitled Fees and Disbursements for Printing and is itemized in Schedule II–A. This covers the cost of printing 30 copies each of several briefs submitted by McLouth and 30 copies of McLouth's Findings of Fact and Conclusions of Law, totaling $4,860.-30. Under 28 U.S.C. § 1920(3), the court clearly has power to tax the cost of printing defendant's briefs.

With regard to the exercise of the court's discretion in this matter, it is noted that all parties in this action did submit printed briefs. However, no order or rule of this court required printed briefs. Rule XXI of this court permits papers to be submitted if they are "plainly and legibly written, typewritten, printed or reproduced."

In Commerce Oil Refining Corp. v. Miner, 198 F.Supp. 895 (D.R.I.1961), the District Court pointed out that it had no standing rule requiring briefs to be printed, nor had it entered an order to that effect in the pending case. It also concluded that printing of briefs was not necessary in the case before it, and therefore this item of the Bill of Costs was disallowed. This court agrees with that reasoning.

Under the rules of this court, briefs *may* be printed, but need not be. Here, typewritten briefs would not have been adequate. However, since a prior order of this court was not obtained permitting the taxation of these printing costs, only one-half of the costs may be taxed, i. e., $2,430.15.

*Witness Fees ($2,039.96).*

The claimed witness fees are itemized in Schedule II–B.

Plaintiffs challenge defendant's right to tax the cost of travel by Dr. Hellbruegge and Dr. Durrer from a point which lies beyond the subpoena power of the court (i. e., beyond 100 miles). As plaintiffs point out, there are cases to the effect that the court does not have the power to tax the cost of travel in areas outside the reach of the court's subpoena. However, this issue of power was laid to rest by the Supreme Court in Farmer v. Arabian American Oil Company, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). In that case, the Court upheld Judge Weinfeld's decision not to tax the costs of transportation of witnesses which the Arabian American Oil Company brought from Saudi Arabia. However, the Court indicated clearly its position that a federal district court does have the power to tax such costs under appropriate circumstances:

"We cannot accept either the extreme position of the company that the old 100-mile rule has no vitality for any purpose or Farmer's argument that a federal district court can never under any circumstances tax as costs expenses for transporting witnesses more than 100 miles. In this case, however, where taxation of such expenses is being denied, we need not set out the specific circumstances under which such costs can be taxed nor mark precisely the limits of a district court's power to tax them. \* \* \* We therefore hold that Judge Weinfeld was correct in treating this case as an appeal to his discretion." At p. 232, 85 S.Ct. at p. 415.

"That rule [the 100-mile rule], we think, is a proper and necessary consideration in exercising discretion in this field. The century-and-a-half-old special statutory provision relating to service of subpoenas more than 100 miles from the courthouse is designed not only to protect witnesses from the harassment of long, tiresome trips but also, in line with our national policy, to minimize costs of litigation, which policy is strongly emphasized in the Federal Rules of Civil Procedure." At p. 234, 85 S.Ct. at p. 416.

After the *Farmer* case, the Court of Appeals for the Sixth Circuit was presented with the problem of taxing the costs of travel from a distance beyond 100 miles from the courthouse. In Grogan v. United States, 341 F.2d 39 (6th Cir.1965), the court stated in part:

"Quite apparently, the discretion to allow the costs of bringing witnesses from a point more than 100 miles away from the place of hearing and outside the district is not as broad as the discretion conferred on district judges in many other areas. In the present case, we believe it is properly within our review power to rule that the United States should be allowed to recover mileage fees only for travel within the 100-mile limit. The prospect of suing the United States is in-timidating enough to injured workmen, and the burden of preparing a defense is less overwhelming to it than to most, if not all, individual defendants. A commendable care to protect the federal treasury should not blind us to the fact that as judges of the federal government, we have a particular duty to ensure that highest fairness is observed in its dealings with private litigants." At pp. 43–44.

In exercising its discretion whether to tax the costs of bringing these two witnesses to the United States from Europe, the court should be most concerned with the importance and necessity of their testimony. Bank of America v. Loew's, 163 F.Supp. 924 (S.D.N.Y. 1958); Moylan v. AMF Overseas Corp., S.A., 354 F.2d 825 (9th Cir.1965); Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 880 (9th Cir.1969). However, "the disposition has been to limit taxation of witness travel to 100 miles absent special circumstances, despite the *Arabian Oil* decision." 6 Moore's Federal Practice, § 54.77 (1968 Supp. at p. 97).

The presence of witnesses Hellbruegge and Durrer was essential to defendant's contentions relating to anticipation and inventorship. See Henry J. Kaiser Company v. McLouth Steel Corp., 257 F. Supp. 372, 387, 406 (E.D.Mich.1966). Consequently, the court will allow the costs for travel of these two witnesses for one round trip from their homes in Europe to this court and back. The costs claimed for their attendance and subsistence are also allowed.

Plaintiffs also assert that defendant may not tax both mileage and subsistence for witnesses who were not required to remain away from their homes overnight while in attendance in this court. Plaintiffs' position in this regard is well taken.

In relevant part, 28 U.S.C. § 1821 provides:

"Witnesses \* \* \* who attend at points so far removed from their re-

spective residences as to prohibit return thereto from day to day shall be entitled to an additional allowance of $8 per day for expenses of subsistence * * *."

In this case, all of the witnesses listed in Schedule II–B except Dr. Hellbruegge and Dr. Durrer, live in Ann Arbor or the Greater Detroit area and were certainly able to return to their homes in the evening. This being true, the claimed cost of subsistence for these witnesses (Dr. Flinn, Dr. Glass, Dr. Nichols, Mr. Iott, Dr. Pehlke, and Mr. Johnson) is disallowed. In any event, defendant's claims for both subsistence and mileage are inconsistent. See also Katz v. Cie Generale Transatlantique, 190 F.Supp. 435, 436 (E.D.Va.1960).

The total fees for witnesses allowed is $1,551.96.

 *Fees for Exemplification and copies of Papers ($2,213.95).*

Defendant is here asking for the cost of reproducing the original and one copy of its trial exhibits. These exhibits and their costs are itemized in Schedule III, attached to the proposed Bill of Costs, consisting of reports, letters, movies and photographs. It is clear that the court has the power to tax these costs. See 28 U.S.C. § 1920(4) and 6 Moore's Federal Practice, § 54.77[6] at pp. 1368–1371.

Costs have been permitted for movies. Gotz v. Universal Products Company, 3 F.R.D. 153 (D.Del.1943). In the *Gotz* case, about $6,000 was claimed for the cost of the movies; $4,600 of this was disallowed, being incurred in determining a suitable method of photographing. Only the actual cost of reproducing the four motion pictures involved, $1,423.71, was allowed.

The proper test to be applied here with respect to the photographs and movies is whether they were necessary for a proper determination of issues presented and whether they were a material aid to the court in resolving disputed questions of fact. Lanier v. Terminal Ry., Alabama State Docks, 47 F.

R.D. 68 (D.C.Ala.1969). However, the expenses of such exhibits are not allowed when they are merely illustrative or repetitive of otherwise adequate evidence. H. C. Baxter & Bro. v. Great Atlantic & Pacific Tea Company, 44 F.R.D. 49 (D.C.Me.1968).

In view of the complexity of the proof of the factual issues involved in this case, the cost of reproducing the original trial exhibits of defendant is allowed. The cost of one copy of these exhibits is disallowed.

 *Cost of Interpreters and Translations ($19,563.48).*

Defendant has proposed an item of approximately $19,500 consisting of interpreters' fees and the cost of translations of various documents.

Plaintiffs argue that these costs, itemized in Schedule IV, include the translation of documents not offered into evidence and that the services of Dr. Bohlig at trial was unnecessary because plaintiffs would have provided Dr. Alle, their interpreter.

The court has the power to tax an interpreter's fee. See 6 Moore's Federal Practice, § 54.77[4]; Raffold Process Corp. v. Castanea Paper Co., 25 F.Supp. 593 (W.D.Pa.1938); Bennett Chemical Corp. v. Atlantic Commodities, Ltd., 24 F.R.D. 200, 204 (S.D.N.Y.1959); Gotz v. Universal Products Co., 3 F.R.D. 153 (D.Del.1943).

The relevant question again is whether the items being translated were reasonably necessary for a proper determination of the issues. It appears to the court that the services of an interpreter for defendant were required in connection with the testimony of the witnesses listed in Schedule IV(A). However, the cost of acquiring Exhibits 88 and 93 is disallowed, being part of defendant's trial preparation. Part B of Schedule IV is disallowed for the same reason.

Part C of Schedule IV is disallowed. Neither the court nor defendant's counsel can determine what part of the claimed costs was incurred in translat--

ing documents, or parts thereof, actually admitted into evidence. The burden for providing such a breakdown is with defendant.

The total costs allowed for interpreters and translations is $3,033.27.[1]

■■■■■ *Deposition Costs ($6,657.55).*

McLouth claims the costs incurred in obtaining transcripts of the depositions of the persons listed on Schedule VI.

It is evident that this court has the power to tax these costs under some circumstances. 6 Moore's Federal Practice, § 54.77[4]. However, it is necessary to distinguish between depositions which are reasonably necessary to properly present a party's case and depositions used essentially for the purpose of investigation or the kindred purpose of thorough preparation by counsel. Investigation expenses are not chargeable as costs. It is presumably in order to effectuate this distinction that many courts have adopted the practice of permitting taxation of deposition costs such as stenographers' fees for depositions introduced at trial or used in cross-examination of witnesses and disallowing the costs of all other depositions.

The claimed costs of the eleven depositions taken by Kaiser are disallowed. It appears that Toomey, Meyer, Zimmerman, Hays and Prince did not testify by deposition or orally. Iott, Glass, Flinn, Pehlke, and Johnson testified orally. These depositions were obtained for convenience of counsel. Only the deposition of Stone was read at trial; moreover, its use was quite limited and related to a subject not essential for the decision of the case.

As to the copies of six depositions of plaintiff, the cost of Zimmerman's deposition is disallowed since he did not testify. However, the other five persons listed in Schedule VI(A) testified at trial by deposition as plaintiffs' witness-

es. The cost of defendant's copy of each of these depositions is therefore allowed, being necessary for cross-examination.

The total amount allowed is $529.10.

■■■■■ *The Linz, Austria, Tests and Depositions ($58,337.41).*

Defendant seeks to tax approximately $58,000 in costs of its attorneys and experts' traveling expenses, expenses for an interpreter, reporter fees and expenses, and its attorneys' fees. Of this amount, $40,000 is for attorneys' fees. See Schedule VIII of the proposed Bill of Costs.

Professor Moore has stated that a party's attorneys' fees in connection with the taking of a deposition is usually not a taxable cost unless there is such bad faith, vexatiousness, or oppressiveness that the award of an attorney's fee is proper under the general equitable power. Also, attorneys' traveling expenses are not costs. 4 Moore's Federal Practice, § 26.36, at pp. 1704–1705. See also Hope Basket Co. v. Product Advancement Corp., 104 F.Supp. 444 (W. D.Mich.1952); Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163 (7th Cir. 1968); Cf., Purer & Co. v. Aktiebolaget Addo, 410 F.2d 871, 880 (9th Cir.1969) (fees allowed; defendant guilty of fraud in obtaining license). Since defendant does not allege or argue that plaintiffs were guilty of bad faith, vexatiousness or oppressiveness, the attorneys' fees claimed for the Linz, Austria, tests are disallowed.

With respect to the travel costs of defendant's counsel in attending the tests in Austria, the law is slightly more uncertain. Professor Moore takes the position that such costs are not taxable. However, in cases where depositions are being taken far from the forum, some courts have allowed travel costs. Compare Hope Basket Co. v. Product Advancement Corp., *supra*, and Kiefel v.

---

1. By letter of April 14, 1970, defendant's counsel stated that $1,698.39 of the $4,731.66 claimed in Part A of Schedule IV was incurred in obtaining certified copies of defendant's Exhibits 88 and 93.

Las Vegas Hacienda, Inc., *supra*, (holding such costs not taxable), with Haviland & Company v. Montgomery Ward, 31 F.R.D. 578, 580 (S.D.N.Y.1962) (defendant's deposition of the Chairman of the Board of plaintiff company to be taken in France at plaintiff's expense). On balance, the cases seem to favor the proposition that the traveling expenses, as well as counsel fees, incurred in the taking of the deposition are not taxable absent extraordinary and compelling circumstances. Such circumstances not even having been alleged, the travel expenses of defendant's counsel are disallowed.

The claimed expenses and fees of defendant's reporter and interpreter at the Linz tests are disallowed. This item, for costs incurred attending the plaintiff's tests in Linz, Austria, is disallowed in its entirety.

 *Partial Cost of Planning and Conducting McLouth's Interpartes Test in 1962 and 1964 at the University of Michigan ($66,316.51).*

Defendant claims here costs it incurred in obtaining the services of Dr. Flinn and Dr. Pehlke in conducting tests at Ann Arbor, Michigan, in 1962, and again in 1964, during trial. There is no statutory authorization for allowing such costs. Therefore, defendant's effort to tax these costs must lie in an appeal to the equity powers of this court. Defendant must establish some exceptional circumstances and "dominating reasons of justice" to succeed in such an appeal. In discussing exceptional circumstances which will justify such allowances, the Court of Appeals for the Sixth Circuit has stated that such circumstances exist in the case of "fraud, oppression, or bad faith, cases of fiduciary relationship or those in which the prevailing party has helped to create the fund upon which the costs are charged." Swan Carburetor Co. v. Chrysler Corp., 149 F.2d 476 (6th Cir.1945).

Here it would appear that the 1962 tests at the University of Michigan were in the nature of preliminary investigations and, as such, not taxable.

The tests of May 1964, which were attended by this court, do not meet the criterion of "exceptional circumstances" as defined in the *Swan* case. Also, it is well established that the fees of an expert witness in excess of statutory witness fees are not taxable costs. 6 Moore's Federal Practice, § 54.77[5] at p. 1367; Henkel v. Chicago, St. Paul, M. & O. Ry. Company, 284 U.S. 444, 52 S. Ct. 223, 76 L.Ed. 386 (1932).

The costs claimed by McLouth for the Ann Arbor tests in 1962 and 1964, itemized in Schedule IX, are disallowed in their entirety.

An appropriate order may be submitted.