TCW SPECIAL CREDITS, INC., Plaintiff,

v.

F/V KASSANDRA Z, OFFICIAL NO. 6553390,
Her Engines, Nets, Furniture, Etc., Defendant in Rem,
and
KASSANDRA Z FISHING CO., INC., Defendant in Personam.

AND RELATED CLAIMS-IN-INTERVENTION.

High Court of American Samoa
Trial Division

CA No. 92-96

Before KRUSE, Chief Justice, and TUA`OLO, Chief Associate Judge.

Counsel: For Plaintiff TCW, Craig Miller and Barry I. Rose
 For Plaintiffs-in-Intervention Michael Datin, et al., William
 Banning and William H. Reardon
 For Intervenor A. Sardina, Brian M. Thompson

ORDER ON CROSS MOTIONS FOR RECONSIDERATION
AND VARIOUS OTHER MOTIONS

### Procedural History

On December 2, 1999, a hearing was held in this matter on numerous motions filed by Plaintiff TCW Special Credits, Inc. ("TCW") and

Plaintiffs-In-Intervention Michael Datin, et. al. ("Crew") with counsels Banning, Reardon, Rose and Thompson present. A brief description of those motions, in order of filing date, follows:

1. Crew's Bill of Costs, filed October 28, 1999.

2. Crew's Motion for Reconsideration or New Trial, filed October 29, 1999. The Crew alleges a multiplicity of errors in the Court's opinion and order of October 20, 1999.

3. The Crew's Request for Judicial Notice, filed October 29, 1999. The Crew requests that the Court take judicial notice of three documents relating to its Motion for Reconsideration or New Trial.

4. TCW's Motion for Reconsideration or New Trial, filed November 1, 1999. In this motion, TCW alleges errors in the Court's rulings regarding the award of *quantum meruit* to the Crew for the time period between the end of trip 26 and the arrest of the vessel, the shifting to TCW of the burden of proof concerning comparable seamen for purposes of statutory wage calculations, and the status of the auction fee.

5. TCW's Motion for Partial Stay of Execution of Judgment, filed November 1, 1999. TCW asserts that if funds are distributed to the Crew, and TCW prevails on appeal, TCW will be unduly burdened in its attempts to recover those funds. TCW accordingly requests a stay of execution of judgment, and also seeks a waiver of the supersedeas bond requirement.

6. TCW's Motion for Clarification, filed November 2, 1999. TCW seeks clarification from the Court as to whether the $53,121.75 paid broker Michael McGowan is included in the $90,015.00 assessed by the Court as auction fees.

7. TCW's Motion for Order Approving Disbursement of Funds and for Determination of Attorney Fees and Costs, filed November 12, 1999. TCW stipulates to a distribution of $457,657.60 in partial satisfaction of judgment but seeks to condition this distribution on the Court's examination of the Crew's legal fees.

8. Crew's Request for Sanctions against TCW, filed November 29, 1999.

The Crew argues that TCW's motion concerning legal fees is meritless because the Court denied a similar motion on May 7, 1999.

## Analysis

## I. Crew's Bill of Costs

■ Appellate Court Rule 39(d) "requires that a party who desires costs to be assigned shall state them in an itemized and verified bill of costs which shall be filed with the clerk, with proof of service, within 14 days after the entry of judgment." *Pene v. Bank of Hawaii*, 18 A.S.R.2d 75, 76 (App. Div. 1991). The Crew has met this requirement by filing its bill of costs on October 28, 1999. "Except when express provision therefor is made either in a statute of American Samoa or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." T.C.R.C.P. 54(d). No provision exists in the rules or statutes disallowing costs in the present case.

### A. Prevailing Party

The threshold question is whether the Crew is "the prevailing party" under T.C.R.C.P. 54(d). TCW argues that the Crew cannot be considered to have prevailed for three reasons: first, the Crew did not prevail on all the issues before the Court; second, the Crew recovered roughly less than a third of its claimed damages; and third, the Crew would have been better off accepting TCW's settlement offers than in proceeding to trial.

■ The Crew has clearly, on the whole, prevailed against TCW in this lawsuit. A plaintiff recovering a judgment is a "prevailing party" to whom costs are owed, even though she may fail to sustain all of her claims in the action. *Kaiser Indus. Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5, 8 (D.C.Mich. 1970) (citing 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 54.70[4] (3d ed. 1999)); *see also Simmons v. Am. Export Lines, Inc.*, 26 F.R.D. 111, 112 (D.C.N.Y. 1960) (where plaintiff prevailed on one of three issues, plaintiff recovered one-third of its costs). Accordingly, the Crew may recover costs under T.C.R.C.P. 54(d).

We take note of a few principles before beginning the piecemeal analysis of the Crew's costs. First, the Court notes that T.C.R.C.P. 54(d) provides wide discretion in the apportionment and taxation of costs. *See, e.g., Jones v. Schellenberger*, 225 F.2d 784, 794 (7th Cir. 1955). Guiding this discretion is the rule that costs are not equivalent to expenses, but include only such statutorily enumerated items as court fees and witness fees. *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 655-56 (7th Cir. 1981). The Court also recognizes that items proposed by winning parties as costs should always be given careful scrutiny. *Farmer v. Arabian Am. Oil. Co.*, 379 U.S. 227, 235 (1964).

■ Although TCW is correct in stating that the Court is not obligated to follow federal law in determining the validity of costs, its argument that the Court should utilize a more stringent standard is not convincing. A.S.C.A. § 43.0101(a) requires that costs be "in an amount which is reasonable, fair and just compensation for the service rendered." We fail to see how this standard is any more conservative than the reasonableness standard used by federal courts in awarding costs under 28 U.S.C. § 1920. We shall accordingly utilize 28 U.S.C. § 1920 and its accompanying caselaw to examine costs proffered by the Crew.

## B. Witness Fees for Parties who were also Witnesses

■ We turn first to witness fees sought by the Crew for Branko Gregov, Tonci Jusic, Guillermo Gonzalez, and Gojko Milisic. These four were all parties in intervention to the case. 28 U.S.C. § 1920(3) admittedly makes no distinction between party and non-party witnesses. "The general rule, however, is that 'parties may not normally collect witness fees.'" *Haroco v. Am. Nat. Bank & Trust of Chicago*, 38 F.3d 1429, 1442 (7th Cir. 1994) (citing *Barber v. Ruth*, 7 F.3d 636, 646 (7th Cir. 1993)); *see also Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977). The Crew argues that witness fees should be allowed for these four parties because they were also witnesses for other parties to the case. While these parties may have played multiple roles, the Crew offers no argument for establishing an exception to the general rule disallowing costs for parties who are also witnesses.. We decline to make such an exception and instead agree with the Ninth Circuit that "the expenses of witnesses who are themselves parties are not taxable." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998). Witness fees for these four parties are denied, and the amount of $13,928.92 is deducted from the Crew's costs..

## C. Expert Witness Fees

■ Expert witness fees are generally limited by statute, and taxation of costs in excess of these amounts are outside a court's discretion unless expressly authorized by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-45 (1987). The Crew having cited no fee-shifting statutes applicable to the present case, the Court will not tax costs in excess of those authorized by 28 U.S.C. § 1821 for witnesses Robert Wallace and George Copitas, these being $3889.92 for Robert Wallace and $3680.92 for George Copitas. The fees for services of these two witnesses, in the amounts of $20,497.26 and $4100.00 respectively, are accordingly denied as costs.

## D. Interpreter fees in the Deposition of Goran Milisic

28 U.S.C. § 1920(6) specifically allows recovery of costs for interpreters

and special interpretation services. The Crew is thus statutorily authorized to recover costs arising out of interpreter Ivanka Gavrilović Smith's services in the deposition of Goran Milisic. TCW asserts, however, that because this deposition was never used at trial, the interpretive services involved in its preparation cannot be taxed as costs. The issue of whether the interpreter's fees should be allowed as costs, however, depends on whether the deposition was reasonably necessary at the time it was taken, not whether it was used at trial. *See, e.g., Kaiser Industries Corp. v. McLouth Steel Corp.*, 50 F.R.D. at 9; *Bennet Chem. Co. v. Atl. Commodities, Ltd.*, 24 F.R.D. 200, 205 (D.C.N.Y. 1959). "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the [trial] court." *Fogelman v. Aramco*, 920 F.2d 278, 285-86 (5th Cir. 1991). The burden of proof rests on the challenger to demonstrate that a deposition was unnecessary or that costs were unreasonable. *See, e.g., Kern County v. Ginn*, 194 Cal. Rptr. 512, 516 (1983); *Horner v. Marine Eng'r's Ass'n.*, 1 Cal.Rptr. 113, 117 (1959). TCW has failed to demonstrate that the deposition in question was not reasonably necessary at the time it was taken. The interpreter fees in the amount of $300.00 will accordingly be allowed by the Court as costs.

E. Depositions

28 U.S.C. § 1920 permits deposition expenses to be awarded as costs. *Alflex Corp. v. Underwriters Lab, Inc.*, 914 F.2d 175, 177-78 (9th Cir. 1990). TCW is correct in stating that the Ninth Circuit Court of Appeals has upheld decisions of district courts that deny costs for depositions solely because they were not used at trial. *Wash. State Dept. of Transp. v. Natural Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995) (holding that such a decision was within the trial court's discretion). The Ninth Circuit has never, however, stated that costs for depositions not used at trial should be denied as a general rule. We follow the majority of jurisdictions in allowing the recovery of costs of depositions, whether or not used at trial, if the taking of the deposition seemed reasonably necessary at the time it was taken. *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987); *Fogelman v. Aramco*, 920 F.2d at 285; *Soler v. Waite*, 989 F.2d 251, 254-55 (7th Cir. 1993). As stated above, the reasonable necessity of the deposition must be disproved by the challenger. TCW has failed to argue that the depositions were not reasonably necessary; their expenses will accordingly be taxed as costs.

F. Attorney Travel Expenses

■ TCW is correct in stating that attorney travel expenses are not allowable as costs. However, TCW does not indicate specific travel expenses for which the Crew's attorneys seek reimbursement, and the Court has been unable to locate any such expenses in the Crew's Bill of

Costs.

G. Cost Apportionment for Depositions of Thomas Meneghini and Narciso Castro

TCW asserts that the depositions of both Thomas Meneghini and Narciso Castro concerned multiple cases, and that the costs related to these depositions should be allocated among these cases accordingly. The Crew does not dispute the general principle of allocation, but merely argues that both depositions concerned matters pertinent to the present case. We will accordingly examine the depositions and allocate costs based upon their content.

From the transcript of the deposition of Thomas Meneghini, volume II, taken on March 22, 1999, offered by the Crew as exhibit 2, it appears that the deposition covered both the Chloe Z and the Kassandra Z cases. The testimony regarding the Chloe Z may have been useful in this case, but it is obviously more pertinent to the Chloe Z matter. The Court having no more information regarding the relative amount of the deposition spent on each case, it will split the costs of this deposition equally between the two cases. This results in an award of $2,272.84 for the depositions of Meneghini, leaving $2,272.84 to be subtracted from the total bill of costs submitted by the crew.

From the transcript of the deposition of Narcisco Castro, taken March 20, 1999, it appears that the deposition concerned only the present case. The costs of the deposition will therefore be allowed.

H. Process Server Fees

■ TCW asserts that costs should not be allowed for service of process on parties who were not deposed or called at trial, but it cites no authority to support this proposition. The Crew similarly offers no support for its assertion that private process server fees are properly allowed as costs. The Ninth Circuit has held that private process server fees may be taxed as costs under 28 U.S.C. § 1920(1). *Alflex Corp.*, 914 F.2d at 178. The Second Circuit flatly disagrees. *United States v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 172 (2d Cir. 1996). The Second Circuit's reason for so holding is that private process server fees are not literally "marshall's fees" allowed as costs under 28 U.S.C. § 1920(1). We think that the Seventh Circuit has struck the proper balance, and follow its holding that a party may recover expenses for service of process in the amount of what a marshal would have charged. *Collins v. Gorman*, 96 F.3d 1057, 1059-60 (7th Cir. 1996). These charges, calculated according to High Court Rule 31, amount to $180.00. The difference between this figure and that proposed by the Crew is $695.70, a sum that will be subtracted from the Crew's allowed costs.

## I. Conclusion and Award of Costs

The Crew has requested an award of $69,838.46 in costs. Subtracting the above figures from this proposed award, we award the Crew $28,343.74 in costs.

## II. Crew's Motion for Reconsideration or New Trial

### A. Grounds for Reconsideration or New Trial

■ T.C.R.C.P. 59(a) does not specify the grounds for a new trial, but in nonjury actions, a great majority of federal jurisdictions hold that a new trial may be granted where the record shows a manifest error of law or fact. *See, e.g., Milwee v. Peachtree Cypress Inv. Co.*, 510 F. Supp. 284, 290 (D.C.Tenn. 1978), *aff'd* 644 F.2d 885 (6th Cir. 1981). In the alternative, a court may alter or amend judgment under T.C.R.C.P. 59(e) if it has made a clear error of law or fact. *See, e.g., Knepp v. Lane*, 859 F. Supp. 173, 175 (E.D.Pa. 1994). The standard for either reconsideration or new trial being thus essentially identical, we will examine our prior order for clear errors of law or fact.

### B. Statutory Wages for Trips 16-24

■ "Void" and "voidable" contracts are two very different legal animals. A void contract is a legal nullity, and cannot serve as the basis for equitable estoppel. In the event that the oral agreements between the Crew and KZFC were void, partial payment on their terms does not constitute a bar to the recovery of statutory wages under 46 U.S.C. § 11107. A voidable contract, on the other hand, may be affirmed by the parties and rendered valid by the doctrine of estoppel. Parties to a transaction conceded to be fair and supposed to be lawful, on the faith of which many other transactions have been entered into, are estopped from questioning its validity and repudiating the transaction to the injury of others. *Branch v. Jesup*, 106 U.S. 468, 476 (1883). If the oral agreements were merely voidable, the Crew could be found to have affirmed them through acceptance of wages under their terms.

Thus, the deciding factor in awarding statutory wages for trips 16-24 is whether Congress, by using the word "void" in 46 U.S.C. § 11107, actually meant void rather than voidable. The Court has reconsidered its holding on this matter and has decided that it made a clear error of law in construing the oral agreements as voidable. The statutory scheme mandates that void be given its literal meaning, and as a result, the majority of the Crew will recover statutory wages for trips 16-24.

■ "The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to

the contrary, that language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum v. Bonjorno*, 494 U.S. 827, 835 (1990) *(citing Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). On the other hand, plain language is not always determinative. For example, the court in *United States v. Peco Int'l*, 243 F. Supp. 250, 253-54 (D.C.Z. 1965), held that Congress actually meant "voidable" when it wrote "void" in a statute concerning the Canal Zone. In fact, numerous elements must be considered when parsing legislative intent, including: the statute's language, purpose, and reach; the class of persons sought to be controlled; the wrong the statute seeks to prevent; legislative history; and the effect of holding contracts in violation of the statute void. 17A AM.JUR.2D *Contracts* § 249 (1991).

Taking each factor in turn, the plain language of the statute says that the oral fishing agreements in this case were "void." 46 U.S.C. § 11107. While not determinative, this language obviously weighs in favor of finding the oral agreements for trips 16-14 void.

Courts examining the purpose of statutory wage recoveries under 46 U.S.C. § 11107 have decided that the statute is intended, in part, to penalize ship owners. *Seattle-First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1198 (9th Cir. 1996) (citing *Bjornsson v. U.S. Dominator, Inc.*, 863 P.2d 235, 238-40 (Alaska 1993)). This purpose of the statute weighs in favor of reading void as void. If the statute is intended, in part, to penalize shipowners, awarding statutory wages in amounts greater than agreed wages best facilitates this goal.

On the other hand, the following proposition concerning the statute's reach argues for the opposite result.

> A distinction may also be made between statutes which forbid certain contracts to be made or certain acts to be done and those which prescribe a certain mode and manner of doing the act, or the procedure to be followed in making the contract, the inference being that a violation of a statute of the latter kind does not necessarily render a contract void.

*United States v. Cont'l Fwdg. Co.*, 311 F. Supp. 956, 964 (Cust. Ct. 1970). Seeing as 46 U.S.C. § 10601 does not forbid oral fishing agreements, but merely specifies that fishing agreements be in written form, this factor weighs in favor of finding the oral agreements voidable rather than void.

The class of persons sought to be controlled by the statutory scheme is comprised of shipowners and masters on board comparatively large fishing vessels, both of whom are responsible for ensuring that fishing agreements are in writing. We are uncertain as to what effect this

determination should have on the void vs. voidable decision, but if we consider the class of persons sought to be protected, seamen's status of wards of admiralty also argues for affording them maximum protection, and thus statutory wages, under the statute by holding any oral fishing agreements to be void. *See, e.g., Cox v. Roth,* 348 U.S. 207, 209-10 (1954).

Consideration of the wrong the statute seeks to prevent, on the other hand, argues for finding the contract merely voidable rather than void. The primary harm the statute seeks to prevent is the failure to pay seamen fair wages for their services. It does not entitle seamen to recover penalty wages. *TCW Special Credits v. Chloe Z Fishing Co.,* 129 F.3d 1330, 1332 (9th Cir. 1997). The Crew having received fair compensation for their services, this Court's award of compensatory wages for the difference between agreed wages and those actually paid comports with the statute's compensatory intent.

In terms of legislative history, the two relevant Congressional reports shed but little light on this issue. The portion of the section-by-section analysis of House Report 98-338 treating § 11107 states that "Section 11107 entitles seamen engaged contrary to any United States law to leave the service of the vessel without loss of wages." We infer from this analysis that the legislative intent underlying § 11107 is to ensure only that seamen are compensated for their work. This goal would be served by holding the Crew's oral agreements to be voidable, and thus grounds for estoppel.

However, the effect of holding the oral agreements merely voidable would be to allow shipowners to avoid using written fishing agreements with impunity. Without the threat of statutory wages, there appears to be little incentive for ship owners to provide written fishing agreements. Seamen will likely not know their rights under the statutes prior to sailing. Even if apprised of these rights, they will likely not be able to go without pay for long periods of time and will be forced by economic circumstances to accept wages on the ship owners' terms. If the owners are subsequently held to owe only agreed wages, their failure to offer written fishing agreements entails no legal consequences.

Granted, this case does not seem to present such a situation, but this Court's prior order would bar statutory wages in a case where crewmembers accepted a portion of agreed wages and subsequently sued under 46 U.S.C. § 11107 at their earliest opportunity. Failing to award statutory wages in such a case would jeopardize the well-being of seamen and contravene the purpose of the statutory scheme. Accordingly, the Court amends its order to award statutory wages to the Crew for trips 16-24, less wages already received for those trips. Gojko Milisic and Raymond Falante will not, however, receive statutory wages

for these trips for reasons described more fully in subsection E, *infra*.

This Court awarded a sum of $54,346.18 to the Crew for "short checks," the difference between wages received and agreed wages, for trips 16-24. *TCW Special Credits, Inc. v. F/V Kassandra Z*, 3 A.S.R.3d 163, 185 (Trial Div. 1999). This amount is to be replaced by damages calculated according to statutory wages for the same trips. The Court has ruled on the rate of wages per ton to be used in this calculation at pages 34-35 of its prior order. These are:

| | | |
|---|---|---|
| Fish Captain | $45.00 | (Yolanda Z) |
| Master | $25.00 | (Yolanda Z) |
| Chief Engineer | $29.00 | (Larry Z) |
| Assistant Engineer | $17.00 | (Soleil Z) |
| Helicopter Pilot | $13.00 | (Chloe Z) |
| Deck Boss | $15.00 | (Kassandra Z) |
| Cook | $10.50 | (Kassandra Z) |
| Seaman/Deckhands | $11.50 | (Larry Z) |

These rates, multiplied by the adjusted tonnage for trips 16-24, produce statutory wages owed the Crew for these trips. We rely on Trial Exhibit 23, in this instance utilizing the calculations present at Tab 23. This exhibit breaks down damages calculated according to the "Highest Wage Paid by the Fleet Times the Discounted Weight Per Settlement Sheets" for each crewmember for each trip. Totals for each crewmember for trips 16-24, excluding Raymond Falante and Gojko Milisic, follow:

| | |
|---|---|
| Ante Didak | $14,589.47 |
| Dragan Gobin | $16,896.90 |
| Guillermo Gonzalez | $59,986.12 |
| Elvir Jakicevic | $43,340.11 |
| Tonci Jusic | $44,045.60 |
| Marjan Matulic | $35,495.28 |
| Todor Matulic | $35,065.11 |
| Mirislav Pavic | $38,313.76 |
| Arsen Pherhat | $38,848.45 |
| Zoran Ramov | $44,617.28 |
| Goran Strucic | $24,343.27 |
| Dragon Drazic | $22,589.80 |
| Ante Dragovic | $37,024.48 |
| Goran Milisic | $11,004.91 |
| Goran Uzelac | $40,427.85 |
| Dragan Blaslov | $12,597.71 |
| Venci Matulich | $11,491.47 |
| Branko Gregov | $26,340.07 |
| Nino Sarin | $19,962.12 |
| Zarko Skific | $26,340.07 |

| Andrew White | $ 5,671.49 |
| **TOTAL** | **$608,991.32** |

The above total represents the amount due crewmembers, calculated with statutory wages according to 46 U.S.C. § 11107 for trips 16-24, excluding Raymond Falante and Gojko Milisic.

For reasons discussed below in subsection E, *infra*, Raymond Falante and Gojko Milisic, as masters, are not entitled to statutory wages under 46 U.S.C. § 11107. Their award for trips 16-24 will accordingly be based on Trial Exhibit 52, which lists unpaid agreed wages due each crewmember for each trip. As in our Opinion and Order at page 33, we adjust the tonnages shown in this exhibit in favor of the Crew by adding 203.5 tons for trip 17 and 83.9 tons for trip 18. After adding their unpaid wages for trips 16-24, we arrive at the following awards:

| Falante, Raymond | $ 6,182.60 |
| Milisic, Gojko | $16,976.00 |

## C. Raymond Falante's Wage Claim for Trip 23

 The Court recognizes a clear error of law in its determination that Raymond Falante should not receive wages for the 180 tons of fish caught while he served as fish captain during trip 23. Cases are legion that assert, as a general principle of maritime law, that a seaman who falls ill or is injured during a voyage is entitled to maintenance, cure, *and wages* for the remainder of the voyage. *See, e.g., Aguilar v. Standard Oil Co.*, 318 U.S. 724, 731-32 (1943); *Lipscomb v. Foss Maritime Co.*, 83 F.3d 1106, 1108-09 (9th Cir. 1996); *Berg v. Fourth Shipping Assoc.*, 82 F.3d 307, 309 (9th Cir. 1996); *Gardiner v. Sea-Land Service, Inc.*, 786 F.2d 943, 946 (9th Cir. 1986); *Dragich v. Strika*, 309 F.2d 161, 163 (9th Cir. 1962).

TCW asserted during the Hearing on Motion for Reconsideration that paying two persons for the same job was not customary practice in the industry. Similarly, Trial Exhibit 53 shows that KZFC believed it should only be paying one person. Be that as it may, this position runs contrary to well-established maritime law and thus constitutes a clear error that the Court must correct at this point in time.

According to the rule cited above, Fish Captain Milisic was legally entitled, under general maritime law, to the wages paid him for the 180 tons of fish in question, even though he left the ship due to illness before these fish were caught. Seeing as Raymond Falante was serving as fish captain when the fish were actually caught, he too is entitled to fish captain wages for the same 180 tons of fish. Thus, the Court accordingly awards Raymond Falante payment due on this claim in the amount of

166

$7200.00, being 180 tons at the agreed wages of $40.00 per ton.

D. Highest Rate of Wages Issue & Adjusted Tonnage

The Court affirms its interpretation of "rate of wages" as found within 46 U.S.C. § 11107. Payments made on the basis of gross tonnages were shown during trial to be anomalous occurrences, and thus do not provide a legitimate basis for computing the wages of a comparable seaman for purposes of the statute. The Crew attacks this same issue from a different angle when it states that because the use of adjusted tonnages was in dispute, it should not serve as the basis for agreed wages under 46 U.S.C. § 11107. Again, this Court disagrees. The preponderance of the evidence demonstrates that adjusted tonnage is almost invariably the measure in the industry for calculating wages. Thus, the "highest rate of wages that could be earned by a seaman at the port of hire" is properly calculated on the basis of adjusted tonnage. *F/V Chloe Z Fishing Co.*, 129 F.3d at 1333.

E. Raymond Falante and Gojko Milisic were both Responsible under 46 U.S.C. § 10601 for Ensuring that Fishing Agreements Complied with the Law

46 U.S.C. § 11107 does not explicitly exclude masters from recovering statutory wages under its provisions. However, this section must be read in light of the larger statutory scheme, the Seamen Protection and Relief Act, of which 46 U.S.C. § 10601 is also a part. Under § 10601, "the master or individual in charge of a fishing vessel . . . . shall make an [sic] fishing agreement in writing with each seaman. . . ." It is obvious, from the plain language of the statute, that Falante, as master of the Kassandra Z, had a duty to make written fishing agreements.

Although Gojko Milisic was serving as the fish captain, rather than master, of the Kassandra Z, he was similarly responsible for ensuring the presence of written agreements. Milisic held a master's license, possessed broad authority to hire and select members of the crew, and acknowledged that he performed "all duties required by any Master and Fish Captain." Response to TCW Written Discovery, 1.9(c), dated October 25, 1998; Tr. at 25-26, 40. Awarding statutory wages for a violation of § 10106 to the very people who violated § 10106 would contravene the well-established legal principle that one cannot benefit from one's own violation of the law. Such a result would also contravene the purpose of § 10106, because it would remove any incentive to comply with the statute. That outcome obviously does not comport with the overall statutory scheme, inclusive of 46 U.S.C. § 11107, and thus Milisic and Falante will not recover statutory wages for the trips during which they were obliged to provide written fishing

agreements.

F. Interest Determination

■ The Crew alleges an abuse of discretion in the Court's failure to award prejudgment interest. An abuse of discretion occurs when a court issues a judgment that has no foundation in fact or law. BLACK'S LAW DICTIONARY 11 (6th ed. 1991). The law of this jurisdiction clearly provides a basis for the denial of prejudgment interest. To reprise, any determination by this Court regarding the award of prejudgment interest "lies soundly within the court's discretion." *See Interocean Ships, Inc. v. Samoa Gases*, 26 A.S.R.2d 28, 43 (Trial Div., 1994) (citing *Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1157 (5th Cir. 1990); *Masters v. Transworld Drilling Co.*, 688 F.2d 1013, 1014 (5th Cir. 1982) (citations omitted)). The Court remains unconvinced that a failure to award prejudgment interest from the dates requested by the Crew will constitute a failure in deterrence. The interest determination is accordingly affirmed.

G. Dates of Quantum Meruit Award

The Court affirms its decision to award quantum meruit wages from the date the fish were off-loaded and the vessel was cleaned, May 21, 1996. The Court reiterates that "the record includes ample evidence to support the common understanding that a fishing trip is only completed when the catch has been off-loaded to the cannery and the vessel has been cleaned." *F/V Kassandra Z*, 3 A.S.R.3d at 181. In addition, although the Crew asserts that the District Court of Guam awarded quantum meruit wages beginning ten days after the Chloe Z arrived in Guam, the Crew neglects to cite to this ruling. In fact, in its initial order, the Guam District Court awarded prejudgment interest only from the date when crewmembers intervened in the case, a result much less favorable to the Crew were this Court to follow it. *F/V ChloeZ Fishing Co.*, 129 F.3d at 1334.

H. Rate of Wages

The Crew states that the Court's setting of wages according to those of comparable seamen is in error. The Court directs the Crew's attention to the Ninth Circuit's decision on this issue, which the Court finds to be much more persuasive authority than that cited by the Crew. *F/V Chloe Z Fishing Co.*, 129 F.3d at 1334. The Court accordingly affirms its determination that statutory wages will be set according to those paid comparable seamen.

## I. Comparable Seamen

The Crew next challenges the Court's determination of comparable seamen. While our determination of comparable seamen is not semantically identical to the ratings system used by the Ninth Circuit, our justification and purpose are identical. "Cases construing the predecessor statutes of 46 U.S.C. § 11107 consistently held that a seaman's 'highest rate of wages' was to be measured against seamen with the same rating *or similar duties*." *F/V Chloe Z Fishing Co.*, 129 F.3d at 1334 (emphasis added). This Court has accordingly made its best effort to identify seamen with similar duties for purposes of calculating statutory wages and affirms these determinations and accompanying calculations.

## J. Raymond Falante's Deposition

The Court refers the Crew to T.C.R.C.P. 32(a)(3). Raymond Falante was not shown to be unavailable. His deposition was therefore properly excluded under this rule.

As for Trial Exhibit 53, T.C.R.C.P. 32(a)(4) states that if a portion of a deposition is used by a party, "an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced . . . ." The Crew failed to establish at trial that the circumstances regarding the faxing of Exhibit 53 "ought in fairness" have been considered along with the exhibit itself. It offers no new arguments in its motion for reconsideration. The document speaks for itself requires no explanation of the circumstances under which it was transmitted. We therefore affirm our decision to exclude Raymond Falante's deposition.

## K. Income Tax Deductions

As TCW does not object to awarding income tax deductions to Raymond Falante and Guillermo Gonzalez, they shall be awarded unpaid income taxes in the amounts of $6,608.00 and $1,897.00 respectively.

## L. Attorney's Fees

Absent statutory authorization, a prevailing party in an admiralty case is generally *not* entitled to an award of attorney's fees. *Interocean Ships v. Samoa Gases*, 26 A.S.R.2d 28, 41-42 (Trial Div. 1994). No statutory authorization exists in this case, and the Crew has not proven bad faith on the part of TCW sufficient to convince this Court to impose attorney's fees. The Court accordingly affirms its decision to deny the award of attorney's fees.

169

M. Revised Award to Crew

| | |
|---|---|
| Statutory Wages for Trips 16-24 (Revised Award) | $ 608,991.32 |
| Raymond Falante & Gojko Milisic's Wages for Trips 16-24 | $ 23,158.60 |
| Raymond Falante's Fish Captain Wages for Trip 23 | $ 7,200.00 |
| Income Tax Deductions | $ 8,505.00 |
| Trips 25 and 26 (Fish Captain/Master) | $ 74,488.08 |
| Trips 25 and 26 (Remainder of Crew) | $ 348,278.13 |
| Port Wait Time | $ 130,805.28 |
| Repatriation | $ 19,500.00 |
| Miscellaneous Damages | $ 6,627.48 |
| **Pre-Interest Total** | **$1,226,553.92** |

The Court will calculate interest in the same manner as it did at page 40 of its prior opinion and order. The Crew is owed 20.93% of the interest accrued on the original deposit as of the date of this order. This amounts to $169,601.63, bringing the Crew's total damages award to $1,396,155.55.

This sum is to be awarded to individual crewmembers in the following amounts:

| | |
|---|---|
| Ante Didak | $ 32,655.64 |
| Dragan Gobin | $ 19,233.32 |
| Guillermo Gonzalez | $ 86,491.67 |
| Elvir Jakicevic | $ 67,085.67 |
| Tonci Jusic | $ 86,630.14 |
| Marjan Matulic | $ 77,026.24 |
| Todor Matulic | $ 76,577.34 |
| Mirislav Pavic | $ 43,611.59 |

170

| | |
|---|---|
| Arsen Pherhat | $ 44,220.22 |
| Zoran Ramov | $ 50,786.73 |
| Goran Strucic | $ 64,190.13 |
| Dragon Drazic | $ 73,388.18 |
| Ante Dragovic | $ 42,144.04 |
| Goran Milisic | $ 59,428.45 |
| Goran Uzelac | $ 63,607.43 |
| Dragan Blaslov | $ 14,339.66 |
| Venci Matulich | $ 13,080.45 |
| Branko Gregov | $ 66,631.51 |
| Nino Sarin | $ 22,722.38 |
| Zarko Skific | $ 65,188.97 |
| Andrew White | $ 6,455.71 |
| Carlos Vinches | $ 25,251.97 |
| Michael Datin | $ 44,689.61 |
| Thomas Adams | $ 18,386.12 |
| Zarko Marcina | $ 19,197.58 |
| Ante Vikario | $ 19,197.58 |
| Miroslav Skific | $ 19,197.58 |
| Ante Fizulic | $ 19,197.58 |
| Raymond Falante | $ 44,391.46 |
| Gojko Milisic | $110,700.64 |

## III. Crew's Request for Judicial Notice

 Under Trial Court Rule of Evidence 201(d) "[a] court shall take judicial notice [of an adjudicative fact] if requested by a party and supplied with the necessary information." An adjudicative fact is "one not subject to reasonable dispute . . . ." In the present case, the Crew requests that the Court take judicial notice of certain documents offered in support of its motion for reconsideration or new trial. Its purpose in so doing is to finesse the Court into taking judicial notice of a specific fact embedded within these documents, namely, that the seamen in these cases had received partial wages before suing under 46 U.S.C. § 11107. The Crew's ultimate goal is to prove that other jurisdictions have awarded statutory wages in cases where seamen had already been paid part of their agreed wages.

Although disingenuous, the Crew's request for judicial notice is granted. The Court recognizes the proffered documents as "sources whose accuracy cannot reasonably be questioned," and takes judicial notice of the fact that the seamen in the *Chloe Z* and *Seattle First* cases had received partial payment of wages for fishing trips upon which they based 46 U.S.C. § 11107 statutory wage claims.

## IV. TCW's Motion for Reconsideration or New Trial

### A. Grounds for Reconsideration or New Trial

See the discussion in the section discussing the Crew's Motion for Reconsideration or New Trial, *supra*.

### B. Quantum Meruit Award

TCW asserts that the Court erred in permitting the Crew to recover wages in quantum meruit for the time period running from the end of trip 26 to the date the vessel was arrested. This award was clearly proper according to precedent both within this jurisdiction and jurisdictions where this specific issue has been adjudicated. *See Zuguin v. M/V Captain M.J. Souza*, 23 A.S.R.2d 7 (Trial Div. 1992), *TCW Special Credits v. Chloe Z Fishing Co.*, No. 97-15726 at 7-13 (D. Guam filed June 19, 1998).

The quantum meruit award has two purposes. First, to compensate crewmembers for actual work performed on board the vessel, and second, to compensate the Crew for remaining available to KZFC. Gojko Milisic, like the rest of the Crew, did not seek work because he relied upon repeated assurances from the owners that the ship would be sailing again shortly. For this reason, whether he was in Pago Pago or California at the time, Milisic was entitled to recover quantum meruit for remaining available to KZFC.

### C. Comparable Seamen

TCW also argues that the Court erred in calculating statutory wages for Trips 25 and 26, asserting that it ignored factors of "rank, job classification, duties, and ability." This assertion is flawed. The figures provided by the Crew (and not disputed by TCW) that served as the basis for the award clearly differentiated between wages paid to seamen performing different jobs and holding different positions.

The Crew having fulfilled its burden of production by providing these figures, the burden shifted to TCW to refute them. TCW failed to do so. Shifting this burden to TCW is completely in accord with the rule that "it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion . . . ." *Patterson v. New York*, 432 U.S. 197, 201-202 (1977). In shifting the burden to TCW, "we recognize that admiralty law stands apart from other areas of federal law. Its longstanding principles reflect unique norms and further distinct goals." *Hood v. Knappton Corp.*, 986 F.2d 329, 331 (9th Cir. 1993). One of these distinct goals is to afford special protection to seamen.

This Court affirms its decision to shift the burden of production to TCW for purposes of refuting the Crew's rates of wages for comparable seamen. This decision both protects seamen and fully comports with the well-established practice of allocating the burden of production to the party best able to access the necessary information. In this case, TCW can access pay rates for every crewman in the entire fleet. The Crew, on the other hand, would most likely have to conduct a lengthy and expensive discovery process to obtain the very same information. The burden was thus fairly shifted to TCW. TCW, unable to shoulder this burden, fails to offer any evidence that would convince the Court that it has made a manifest error.

## D. Auction Fees

Finally, TCW questions the imposition of marshall's auction fees in the amount of $90,015.00. This sum was calculated according to High Court Rule of Civil Procedure 31(d), which charges the following fees:

> (d) for seizing or levying on property, disposing of same and paying over money . . . a commission of 3% on the first $1000 of the amounts collected, however in no event less than $10, and 1½% on the excess of any sum over $1000;

These mandated fees do not include, and are over and above, the compensation awarded by this Court on October 31, 1996, to broker Michael McGowen for his services in the sale of the vessel F/V Kassandra Z.

## V. TCW's Motion for Partial Stay of Execution of Judgment

█ Under Federal Rule of Civil Procedure 62(d), a party appealing the order of a district court involving a money judgment is entitled to a stay of that judgment as a matter of right upon posting of a supersedeas bond. *See Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 87 S.Ct. 1, 3 (1966). However, under the laws of American Samoa, a stay upon posting of a supersedeas bond is not a matter of right, but is rather "[s]ubject to the discretion of the court . . . ." T.C.R.C.P. 62(d).

"A court should not grant a stay of judgment pending appeal automatically or casually . . . . The court's discretion to grant a stay should therefore be exercised only 'for cause shown.'" *Asifoa v. Lualemana*, 17 A.S.R. 2d 10, 12 (App. Div. 1990) (citing A.S.C.A. § 43.0803). The question before us is what constitutes sufficient cause. "Such cause must presumably amount to more than just that the appellants, should they eventually prevail in their appeal, will have been inconvenienced by having had to comply in the meantime with the trial court's judgment." *Id.* TCW has argued effectively that funds disbursed

to the Crew will be extremely difficult to recover if TCW prevails upon appeal. It has thus demonstrated cause for staying enforcement of the judgment, but offers no justification for waiving the bond requirement.

"When a judgment is for money alone, the costs imposed on the prevailing party by a delay in execution can be minimized by requiring a supersedeas bond and by awarding post-judgment interest in an amount equivalent to the value of the use of the money." *Id*. The Court declines to grant a stay in absence of the required bond because to do so would unduly injure the Crew by further delaying its recovery. Only by posting a supersedeas bond can TCW minimize this injury, and thus succeed in its request for a stay of execution. In the absence of the required supersedeas bond, the motion is denied.

## VI. TCW's Motion for Clarification

See the discussion of auction fees, *supra*.

## VII. TCW's Motion for Order Approving Disbursement of Funds and for Determination of Attorney Fees and Costs

The disbursement of funds in the amount of $457,657.60, agreed to by both parties, is approved.

TCW's request for the Court to inquire into the Crew's economic relationship with its counsel is denied. TCW has asserted no change in circumstances that would cause the Court to disagree with its prior ruling on this issue. *See TCW Special Credits, Inc. v. F/V Kassandra Z*, 3 A.S.R.3d 149, 154 (Trial Div. 1999).

## VIII. Crew's Request for Sanctions against TCW

The Crew's request for Sanctions against TCW, in response to its Motion for Determination of Attorney Fees and Costs, is also denied. Although TCW does appear to be merely rehashing its prior request, the Crew has been guilty of the same in its Motion for Reconsideration or New Trial with respect to the Court's determination of comparable seamen. In sum, both sides have needlessly protracted certain aspects of this litigation by contesting and recontesting issues already determined. The Court will accordingly deny sanctions.

## Order

For the foregoing reasons, the Clerk of Courts shall enter judgment in favor of the Crew in the sum of $1,396,155.55 damages, to be distributed to individual crewmembers as above set out, plus $28,343.74 in costs. The sum of $90,015.00 is to be paid to the American Samoa Government

as H.C.R. 31(d) auction fees.

It is so ordered.